508 So.2d 1111 (1987)
James Henry FOSTER
v.
STATE of Mississippi.
No. DP-59.
Supreme Court of Mississippi.
May 27, 1987.
*1112 Gaines S. Dyer, Dyer, Dyer, Dyer & Jones, Greenville, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Jackson, for appellee.
Before En Banc.
WALKER, Chief Justice, for the Court:
James Henry Foster was charged by indictment with the capital murder of Ruby Jean Elliott. In a bifurcated trial in the Circuit Court of the Second Judicial District of Bolivar County, he was convicted of capital murder and sentenced to death. From that conviction he appeals, assigning seven (7) errors. Because the trial court improperly limited Foster's cross-examination of the State's key witness, we reverse the conviction and remand the cause for a new trial.
On the morning of April 2, 1984, the body of Ruby Jean Elliott was found in a vacant lot near Shaw, Mississippi. An autopsy performed by Rodrigo Galvez, M.D., revealed that the cause of death was massive internal bleeding resulting from a deep stab wound to the chest. Laboratory tests indicated that seminal fluid was present in both the vagina and the rectum.
As the result of a police investigation, Foster was arrested and charged with capital murder. His first trial ended in a mistrial when the members of the jury were unable to agree on a verdict. Prior to the second trial, defense counsel moved for a change of venue, but the motion was denied by the trial court. At the conclusion of the guilt phase of the second trial, the jury returned a verdict of guilty of capital murder. The sentencing phase was then *1113 conducted, after which the jury found that Foster should suffer the death penalty. Sentenced to die by lethal injection, Foster has appealed his conviction and sentence to this Court.

I. DID THE TRIAL COURT ERR IN FORBIDDING CROSS EXAMINATION OF HENRY LEE CURRY CONCERNING, AMONG OTHER THINGS, THE TREATMENT HE HAD RECEIVED IN THE BOLIVAR COUNTY JAIL?
The evidence which the State presented at trial was largely circumstantial, with the notable exception of Henry Lee Curry's testimony regarding Foster's alleged "jailhouse confession." While Foster was incarcerated in the Bolivar County Jail after his arrest, Curry was also imprisoned there, following a recent conviction. According to Curry's testimony, Foster told Curry, in detail, how he had raped and murdered Elliott. In May or June of 1984, Curry escaped from the Bolivar County Jail, apparently subsequent to hearing Foster's confession. After being at large for fifty (50) days, Curry was apprehended in Chicago, Illinois, and was returned to Mississippi.
Because Curry was the State's "star witness," defense counsel quite naturally pursued every possible avenue of impeachment, including prior inconsistent statements, prior convictions, preferential treatment by Bolivar County law enforcement officers, and lack of prosecution for his escape from the Bolivar County Jail. In particular, defense counsel attempted to show that in return for Curry's testimony, Bolivar County officials transferred Curry from the State Penitentiary to the Bolivar County Jail, even though Curry had previously escaped from that jail.
Before its direct examination of Curry, the State moved the trial court to prevent defense counsel from cross-examining Curry extensively on the unindicted offense of escape, as the State claimed the defense had done in the first trial. The trial court made this ruling on the motion:
Now, from the Court's research of the law, under ordinary circumstances prior arrests or charges that don't amount to convictions are normally not admissible for impeachment. But where there could be an inference of or where there was an indication that there possibly could be some inducement had been made to the witness to testify the Court has the discretion of allowing cross-examination with the Court limiting that as it sees fit. And the Court is ruling that it will allow cross-examination with regard to that particular subject matter up to either an admission or a denial by the witness as to whether he was or was not charged.
* * * * * *
 Now, I don't want to go into any details on how he has been treated or anything else other than the pure fact of his arrest or non-arrest. We are going to the credibility of this witness and the only reason that I am letting this in at all is because there could be some inference that he had some inducement to testify for the State and because of that possibility  ordinarily I wouldn't allow any testimony concerning any other charge that he has not been tried and convicted for. It is somewhat in the posture of  not an accomplice but it is sorta [sic] in the same posture as a person testifying as an accomplice  the basic principles seem to apply in a case of this sort.
* * * * * *
As I recall there were assumptions or questions [during the first trial] couched in terms such as, "well, you were allowed to have the run of the jail," and you were brought back  well, I've really forgotten the exact details but it went way beyond anything that had been presented in the courtroom as to how he was treated. If anything like that come in of course, the State would be entitled to rebut it.
* * * * * *
Well, the Court has said it would allow and as to whether or not he was charged with that crime and beyond that  I think whatever his answer to it is fit. If you consider him to be falsifying, then you have the right to prove otherwise if you *1114 can. But I am going to limit it to that. I will not allow the testimony as to his being transferred back and forth or how he was transported or why. It is just a matter of whether or not he was arrested and charged  but no questions as to whether he was tried or not, just to whether he was charged.
Defense counsel then made this offer of proof:
Your Honor, I would respectfully request the Court that I be allowed to ask this witness, first of all, if he says he has been arrested questions concerning whether or not he has been tried for this charge; secondly, I would ask to be allowed to ask this witness where he has been incarcerated since he was returned to the Bolivar County Jail and whether or not members of the Bolivar Count [sic] Sheriff's Department personally transported him from the penitentiary  Mississippi State Penitentiary back to the Bolivar County Jail at the request of this particular inmate, Curry, who will openly admit, as I understand it from his former testimony, that he has escaped from the same jail that is the Bolivar County Jail. The reason that I ask that I be allowed to ask him those questions, I think the jury has a perfect right to determine whether or not the same law enforcement agency, the Bolivar County Sheriff's Department, has indeed offered him anything such as transfer from the penitentiary to the Bolivar County Jail for incarceration here for his testimony today which is going to be extremely damaging to the Defendant in light of the fact that it is a so-called confession statement.
Foster argues on appeal that the trial court unduly restricted his cross-examination of Curry. Because we agree that Foster was denied the right of confrontation, we are compelled to reverse the conviction.
The accused in a criminal trial has a fundamental right, implicit in the confrontation clauses of our state and federal constitutions, to cross-examine the witnesses testifying against him. U.S. Const. Amend. VI; Miss. Const. Art. 3, § 26; Lee v. Illinois, ___ U.S. ___, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); Miller v. State, 473 So.2d 945 (Miss. 1985). This right, which is the cornerstone of American justice, was designed "not merely to insure punishment to the guilty, but to insure protection to the innocent, [for without it] every one would hold his liberty at the mercy of the government." Beckwith v. Bean, 98 U.S. 266, 297, 8 Otto 266, 297, 25 L.Ed. 124, 135-36 (1879) (Field, J., dissenting).
The right of confrontation is not, however, unbounded. Its contours are shaped so as to accomodate other legitimate interests, Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1083, 35 L.Ed.2d 297 (1973); and it is always subject to the trial court's inherent power to limit cross-examination to relevant factual issues, Johnston v. State, 376 So.2d 1343 (Miss. 1979). Although the extent of cross-examination is committed to the sound discretion of the trial court,[1]Pace v. State, 473 So.2d 167 (Miss. 1985), that discretion is not without its limits, and this Court has reversed where the trial court has exceeded those limits. Horne v. State, 487 So.2d 213 (Miss. 1986) (error to prohibit defense counsel from showing, by cross-examination, that law enforcement officer had handled evidence incompetently in the past); Miskelley v. State, 480 So.2d 1104 (Miss. 1985) (error to prohibit defense counsel from questioning female friend to whom defendant confessed, about sexual favors she allegedly granted to coax the confession from him). When a witness has entered into an agreement with the State which guarantees his immunity or leniency in exchange for his testimony, that agreement is a proper subject for cross-examination. Barnes v. State, 460 So.2d 126 (Miss. 1984). In cases where the witness has been charged with a crime, but no formal agreement as to leniency has been executed, inquiry into the witness's motive still *1115 should be allowed, since the hope of leniency may provide a reason for the testimony. Hall v. State, 476 So.2d 26 (Miss. 1985).
In the case at bar, the trial court, in ruling on the motion, failed to distinguish between impeachment by proving prior convictions or bad acts, and, on the other hand, impeachment by showing bias, prejudice or motive. The latter is involved in the case at bar. In its ruling the trial court stated, "I don't want to go into any details on how he has been treated or anything else other than the pure fact of his arrest or non-arrest." In attempting to prove Curry's escape and lack of prosecution for it, and in attempting to show alleged preferential treatment given to Curry by law enforcement officers, defense counsel was trying to persuade the jury, not that Curry should be doubted because he was a criminal (that purpose was accomplished by showing convictions), but that Curry should be doubted because he had a motive for testifying as he did  specifically, that he was testifying because he had not been prosecuted for the escape and because he was receiving preferential treatment. When the chosen method of impeachment is by proof of convictions, details of the crime are inadmissible. Sanders v. State, 352 So.2d 822 (Miss. 1977). When, however, the chosen method of impeachment is by proof of bias, prejudice or motive, as in the case at bar, wide latitude is to be allowed in cross-examination, Parker v. State, 484 So.2d 1033, 1037 (Miss. 1986), Sanders v. State, 352 So.2d 822 (Miss. 1977), although care must still be taken to safeguard the witness's right against self-incrimination, Hall v. State, 476 So.2d 26 (Miss. 1985). Thus, questions about the details of the escape were improper, but questions about preferential treatment constituted a legitimate attempt to show the witness's bias or motive in testifying.
The trial court based its ruling, in part, on its conclusion that defense counsel had, during the previous trial, asked Curry questions that "went way beyond anything that had been presented in the courtroom... ." Apparently, the trial court believed that cross-examination was proper only if it was based on facts in evidence. The law makes no such requirement. See Harris v. Buxton, 460 So.2d 828, 833-34 (Miss. 1984) (no offer of proof required when cross-examination improperly restricted). Counsel must, however, have a good faith basis for any question asked on cross-examination. U.S. v. Peterson, 808 F.2d 969, 977-78 (2nd Cir.1987), U.S. v. Moran, 759 F.2d 777, 786 (9th Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986). For example, counsel should not ask an eyewitness, "Isn't it true that you are legally blind?" unless counsel has a good faith basis for asking the question. If counsel opposite challenges the good faith basis, the trial court may, in its discretion, conduct an in camera hearing to determine whether such a basis exists. No such challenge was made in the case at bar. The trial court should not have based its ruling on the absence of evidentiary support for the questions.
In the case at bar, Henry Lee Curry was the key prosecution witness. His testimony was essential to the State's case, which without the "jailhouse confession" would have consisted entirely of circumstantial evidence. In defending against his most formidable adversary, Foster was forced to fight with one hand tied behind his back. The trial court prevented him from striking his most potent blow: an attack on Curry's motive for testifying. Thus, the jury was left to consider only Curry's story, without benefit of evidence that might shed light on why Curry testified as he did. Because the restriction on cross-examination denied Foster his fundamental right to be confronted with witnesses against him, we are compelled to reverse the conviction and remand the cause for a new trial, at which Foster will be allowed to explore fully any possible bias or motive on Curry's part.

* * *
Because Foster's remaining assignments involve issues that may arise on remand, we address each of them. The Mississippi Rules of Evidence will be applicable to any retrial, so our determination of evidentiary points is based on those rules.

*1116 II. DID THE TRIAL COURT ERR IN FAILING TO GRANT FOSTER'S MOTION FOR CHANGE OF VENUE?
A change of venue requested by the defense ordinarily should be granted in a capital case where, under the totality of the circumstances, it appears reasonably likely that, in the absence of such relief, the accused may lose his right to a fair trial. Fisher v. State, 481 So.2d 203, 220 (Miss. 1985).
In support of a motion for change of venue, the defendant must submit the affidavits of two knowledgable persons stating that he cannot receive a fair trial in the county. Johnson v. State, 476 So.2d 1195, 1210 (Miss. 1985). By complying with this requirement, the defendant gains the benefit of a rebuttable presumption.[2]Id. The State then must go forward with evidence that a fair trial can be had without a change of venue. The trial court must consider the totality of the circumstances, Fisher, 481 So.2d at 220, including the venue hearing, prejudicial pre-trial publicity (if any) and voir dire, White v. State, 495 So.2d 1346 (Miss. 1986); Weeks v. State, 493 So.2d 1280 (Miss. 1986); Cabello v. State, 490 So.2d 852, cert. denied, ___ U.S. ___, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986); Wiley v. State, 484 So.2d 339, cert. denied, ___ U.S. ___, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986), in order to determine whether it is doubtful that an impartial jury can be empaneled. If so, the motion should be granted.
At the venue hearing in the instant case, Foster did not offer a single witness to testify that he could not be afforded a fair trial in Bolivar County. The State, however, offered nine (9) witnesses who testified that Foster could receive a fair trial there. Although Foster submitted thirteen (13) newspaper articles about the murder and the first trial, they appear to be objective, factual accounts. Finally we note the trial court's meticulous voir dire of the jury. Among the potential jurors who had heard or read about the case, none was sworn who had not answered in the affirmative this question, posed to each by the trial court: "Can you lay aside what you have heard or read and be fair and impartial?" Considering all of these factors, we cannot say that, under the totality of the circumstances, it appeared reasonably likely that Foster's right to a fair trial might be lost, absent a change of venue.
We are, however, troubled by the conduct of the district attorney, who made the following statements to the press after the first trial ended in a mistrial:
Their [the jury's] indecision makes it obvious that a murderer is still loose. If the community attitude is that they just don't care, we may not try [the case] again... . If the community doesn't care, I'd just be spinning my wheels and spending the county's money. If there is no strong feeling in the community, we will not try him again.
That the district attorney was frustrated with the mistrial is understandable. That frustration, however, should not have been expressed publicly. Each juror empaneled for Foster's first trial solemnly vowed to "well and truly try the issue ... and a true verdict give according to the evidence and the law." Miss. Code Ann. § 13-5-73 (1972). Having fulfilled that oath, the jurors should not have been criticized publicly by a prosecutor dissatisfied with the result which they reached. Nor should the citizens of Bolivar County have been subjected to the district attorney's statement that unless they evidenced "strong feeling" against Foster, a murderer would be allowed to remain at large among them. The "strong feeling" which the district attorney attempted to elicit is precisely the type of "strong public sentiment against the defendant" that necessitated reversal for failure to grant change of venue in Johnson v. State, 476 So.2d 1195, 1211 (Miss. 1985). It is only because the effort in this case was unsuccessful that we are not compelled to reverse on *1117 this ground. In short, the district attorney must try his case in the courtroom, not in the newspaper.

III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN OVERRULING FOSTER'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF EXPERT WITNESSES PAT EDDINGS AND RODRIGO GALVEZ, CONCERNING THEIR OPINIONS BASED ON POSSIBILITIES, AS SUCH EVIDENCE HAD NO PROBATIVE VALUE AND WAS HIGHLY PREJUDICIAL TO FOSTER?
Pat Eddings, a chemist with the Mississippi Crime Laboratory, was called by the prosecution to testify to the results of tests which compared paint chips found on the victim's clothing with paint chips from the spray-painted seat of Foster's car. The essence of her testimony was that the two (2) samples were indistinguishable in color, texture, and inorganic chemical composition; and that they therefore could have had a common origin.
Dr. Rodrigo Galvez testified that, based on autopsy findings, Elliott's chest wound could have been caused by a knife which was found in Foster's car. He further testified that the wound was caused by "this knife or another one very similar" to it.
Defense counsel moved to exclude testimony that the paint chips could have had a common origin and that the wound could have been caused by the knife found in Foster's car. The trial court allowed the testimony. Foster argues on appeal that this testimony was too speculative to be admissible.
The Mississippi Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss.R.Evid. 401. The definition is a broad one, favoring admissibility. "If the evidence has any probative value at all, the rule favors its admission." Comment to Miss.R.Evid. 401. Federal courts[3] have consistently construed the federal counterpart to our Rule 401 broadly in favor of admitting evidence. McQueeney v. Wilmington Trust Company, 779 F.2d 916 (3rd Cir.1985); United States v. Downing, 753 F.2d 1224 (3rd Cir.1985); Conway v. Chemical Leaman, 525 F.2d 927 (5th Cir.1976), modified on other grounds on rehearing, 540 F.2d 837 (5th Cir.1976).
Relevance is the threshold requirement of admissibility; that is, only relevant evidence is admissible. Miss.R.Evid. 402. The inquiry does not, however, end there. Relevant evidence may still be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Miss.R.Evid. 403. Thus, a trial court presented with a Rule 403 objection to relevant evidence must engage in a balancing process. The more probative the evidence is, the less likely it is that a 403 factor will be of sufficient consequence to substantially outweigh the probative value. On the other hand, the less probative value the evidence has, the less significant the 403 factor would have to be to justify exclusion.
If one or more of the 403 considerations slightly outweigh probative value, the evidence still must be admitted. To tip the scale is not enough. The 403 factors must, in the language of the rule, "substantially outweigh" probative value before the evidence may be excluded.
The trial court is afforded broad discretion in weighing these interests. United States v. Chalan, 812 F.2d 1302 (10th Cir.1987); Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1351 (5th Cir.1983), cert. denied, 465 U.S. 1028, 104 S.Ct. 1288, 79 L.Ed.2d 690 (1984). When the trial court determines that a 403 factor substantially outweighs probative value, it is still within its discretion to determine whether to exclude the evidence, since 403 states *1118 not that the evidence must be excluded in such cases, but rather that it may be excluded.
Because of this discretion vested in the trial court, our task as an appellate court reviewing a 403 determination is not to engage anew in the 403 balancing process. Rather, we simply determine whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence.
Turning our attention to the disputed testimony in the case at bar, we first must determine whether it meets that threshold requirement for admissibility, relevancy. Does the fact that a knife found in Foster's car could have caused the fatal wound, have any tendency to make it more probable or less probable that the knife found in Foster's car was used to kill Elliott? Obviously, the answer is yes. Before hearing that testimony, the fact-finder knew only that a knife had been found in Foster's car; at that point the fact-finder had no basis for determining whether the knife was in that group of knives which, because of their shape, size, etc. could not have caused Elliott's wound, or whether the knife was in that group of knives which, because of their shape, size, etc., could have caused Elliott's wound. The expert's testimony, by placing the knife in the latter category, had some tendency to make it more probable that the knife found in Foster's car was the knife that caused the fatal wound. Similarly, the fact that paint chips found on Elliott's clothing could have had a common origin with paint chips found on the seats of Foster's car, had some tendency to make it more probable that Elliott had been in Foster's car the night she was killed. Each instance of disputed testimony meets the minimum requirement of relevancy.
The next part of our inquiry concerns whether the trial court abused its discretion in admitting the evidence over Foster's objection.[4] The author of this opinion believes that the evidence was properly admitted. The majority of the Court, however, is of the opinion that the trial court abused its discretion in admitting these two (2) items of testimony. Of particular concern to the majority is the phrase "could have." In the view of the majority, the use of that language, which connoted only a possibility, minimized the evidence's probative value and maximized its tendency to mislead the jury. The latter so outweighed the former that the admission of this testimony constituted an abuse of discretion.
On remand, the experts may testify, for example, that Foster's car seat cannot be excluded as the source of the paint chips found on the victim's clothing, or that the knife found in Foster's car is consistent with the fatal wound. Use of the terms "possible" and "could have" should be avoided.

IV. DID THE TRIAL COURT ERR IN REFUSING INSTRUCTIONS D-9, D-10, D-12 AND D-13?
The four (4) instructions the rejection of which Foster assigns as error are the following:
INSTRUCTION D-9
The Court instructs the jury that you may consider criminal convictions of witnesses as touching on their credibility. In other words, the fact that they have been convicted of criminal convictions in the past may be considered by you in determining what weight, if any, you choose to give to their testimony.
INSTRUCTION D-10
The Court instructs the jury that a "possibility" is not proof beyond a reasonable doubt.
INSTRUCTION D-12
The Court instructs the jury that you may consider whether or not Henry Lee Curry was offered a lighter sentence or a dismissal of charges of escape in exchange for his testimony in determining the weight you place on his testimony.
INSTRUCTION D-13
The Court instructs the jury that the testimony of a witness may be discredited *1119 or impeached by showing that on a prior occasion or occasions he has made a statement or statements which are inconsistent with or contradictory to his testimony in this case. In order to have this effect, the inconsistent or contradictory prior statement must involve a matter which is material to the issues in this case. The prior statement or statements of the witness can be considered by you only for the purpose of determining the weight or believability that you give to his testimony. You may not consider the prior statement or statements as proving the guilt or innocence of the Defendant, James Foster.
Instructions D-9, D-12 and D-13 were improper comments on the testimony. Miss. Code Ann. § 99-17-35 (1972); Stewart v. State, 355 So.2d 94 (Miss. 1978). Instruction D-10 improperly purported to define reasonable doubt. Gray v. State, 351 So.2d 1342 (Miss. 1977). The trial court did not err in refusing these instructions.

V. DID THE TRIAL COURT ERR IN REFUSING TO ALLOW THE TAPE RECORDED CONVERSATIONS OF WILLIE D. MARTIN TO BE PLAYED TO THE JURY?
Willie D. Martin's testimony for the State at trial differed greatly from several of his pre-trial statements. Three (3) of these prior inconsistent statements were made to defense counsel, who recorded them on audio tapes. On cross-examination, Martin admitted he had made the statements, and explained that he had lied because he was afraid of Foster, who had said Martin "knew too much."
Defense counsel then attempted to introduce into evidence the actual tape recordings of his conversations with Martin, which defense counsel proposed to play for the jury. Because Martin had admitted making the prior inconsistent statements, the trial court refused to admit the audio tapes into evidence. Foster assigns this ruling as error.
In its brief the State correctly sets out the rule that, when a witness admits making a prior inconsistent statement, extrinsic evidence of that statement is inadmissible. United States v. Greer, 806 F.2d 556 (5th Cir.1986) (applying Fed.R.Evid. 613). See also Fuselier v. State, 468 So.2d 45 (Miss. 1985). Foster, however, argues that the tape recordings were admissible, not as prior inconsistent statements, but to negate Martin's claim that he was afraid of Foster by proving to the jury that his voice was calm and relaxed when he made the statements. We are of the opinion that playing the tapes for the jury would have unduly emphasized Martin's prior statements; those statements were admissible only to impeach Martin, and not as substantive evidence of the assertions made, Moffett v. State, 456 So.2d 714 (Miss. 1984); United States v. Lay, 644 F.2d 1087 (5th Cir.), cert. denied, 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1971). The trial court did not abuse its discretion in ruling that whatever minimal probative value the tapes may have had with regard to Martin's state of mind was substantially outweighed by the confusion of issues which would have resulted if the jury were to hear audio tapes of statements which were admissible, not as substantive evidence, but only for impeachment purposes, particularly when the witness had already admitted making the statements. Moffett, 456 So.2d at 720; Rule 403, Mississippi Rules of Evidence (relevant evidence may be excluded if probative value is substantially outweighed by, inter alia, danger of confusion). The trial judge enjoys a considerable amount of discretion as to the admissibility of evidence, and his ruling will not be reversed on appeal unless that discretion is abused. Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1351 (5th Cir.1983); Shearer v. State, 423 So.2d 824 (Miss. 1982). The audio tapes were properly excluded.

VI. DID THE TRIAL COURT ERR IN FAILING TO SUSTAIN THE MOTION TO QUASH THE JURY PANEL AS A RESULT OF THE DISCRIMINATORY PRACTICE UTILIZED BY THE STATE IN ITS PEREMPTORY CHALLENGES OF PROSPECTIVE BLACK JURORS?
Because we reverse on the cross-examination issue, this question is moot. We *1120 commend to the careful attention of the trial court, the defense, and the State, these recent decisions of the United States Supreme Court and this Court: Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Griffith v. Kentucky, ___ U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); Williams v. State, 507 So.2d 50 (Miss. 1987); Jones v. State, No. DP-60 (Miss. Jan. 28, 1987) (not yet reported); Irving v. State, 498 So.2d 305 (Miss. 1986).

VII. ASSUMING ARGUENDO THAT NONE OF THE PREVIOUSLY DISCUSSED ERRORS, WHEN CONSIDERED ALONE, REQUIRES REVERSAL, IS REVERSAL NEVERTHELESS MANDATED WHEN THEY ARE CONSIDERED COLLECTIVELY UNDER THE "HEIGHTENED SCRUTINY RULE"?
Because we reverse on the cross-examination issue, we need not consider this assignment of error.

CONCLUSION
Because the trial court's restrictions on Foster's cross-examination of Curry denied Foster his fundamental right to be confronted with the witnesses against him, we reverse the conviction and sentence, and remand the cause to the Circuit Court of Bolivar County for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Neither this discretion nor its limitations are altered by the adoption of Miss.R.Evid. 611, which affords the trial court discretion substantially similar to that allowed by pre-rules case law. See Comment to Rule 611. Foster was tried before effective date of the Mississippi Rules of Evidence, but those rules will be applicable on remand.
[2] In some capital cases, a number of factors may, in aggregate, render the presumption irrebutable; i.e., the defendant may be entitled to a change of venue as a matter of law. Johnson, 476 So.2d at 1213.
[3] Though these federal cases are not binding upon us, they are a persuasive aid to our interpretation. See Brown v. Credit Center, 444 So.2d 358 (Miss. 1984).
[4] Because the case was tried before the adoption of the Mississippi Rules of Evidence, the objection was not predicated on Rule 403. The essence of the objection, however, was based on the policies embodied in Rule 403.