SMITH, Justice,
dissenting:
¶ 21. I respectfully disagree with the majority’s contention that Instruction D-3 is confusing to the jury because of its reference to “giving a false answer to any question” in view of the earlier reference therein to “answering all questions truthfully material at the time asked. ”
¶ 22. First, there is nothing confusing about these two phrases. Simply put, both are two different ways of saying the same thing. Regardless, McCord was required to truthfully answer questions posed to her concerning the fire loss claim that she filed against her insurance company. Instead, she gave several false responses to certain questions which were clearly material to the fire investigation.
¶23. While the majority faults the argument of the carrier that Instruction D-3 was taken “verbatim” from Edmiston v. Schellenger, 343 So.2d 465 (Miss.1977), nevertheless, Edmiston clearly held that an insured, who knew that his statement made during a deposition concerning circumstances surrounding a fire was incorrect, had a duty to correct such answers at the earliest possible date. The Edmiston Court stated that “The insurance company had a right to obtain truthful answers from its insured as to material matters .... This Court has consistently held *94 that a refusal to answer material questions will defeat recovery on the policy.” Edmiston, 343 So.2d at 467, citing Taylor v. Fireman’s Fund Ins. Co., 306 So.2d 638, 644-45 (Miss.1974). The Court further stated, “The company needed to introduce no evidence to prove Sehellenger’s intent to deceive. Where false and material statements are knowingly and willfully made, “the intent to deceive will be implied.” ” Edmiston at 467, citing Claxton v. Fidelity & Guar. Fire Corp., 179 Miss. 556, 175 So. at 212 (1937). Here, McCord’s knowingly and willfully made false statements demonstrate her intent to deceive her carrier, this clear intent to deceive is implied.
¶ 24. More importantly, McCord’s only objection was to the phrase “false answer to any question” which the trial court, sua sponte, corrected. Equally important, however is the fact that the instruction át issue referred only to the plaintiffs deposition which was not shown to or examined by the jury. The only knowledge gained by the jury about McCord’s false statements resulted solely from defense counsel’s reading to her on cross examination. The deposition statements of McCord put in issue were: (1) Her sources of income; (2) Whether she went to Dallas, Georgia, and if so, whether she intended to remain there for three to four weeks; and (3) Whether she reported power failures to the electric company which they attributed to a lack of proper grounding. Clearly, each of these statements were material and admissible.
¶25. McCord was unable to explain from what source she had received large sums of cash found on her premises and recently deposited into her account. She was unemployed at the time, yet her only attempt to explain how she came to have such large sums was that she had received such sums from Miller, and the remainder from Blair, (an Avon-type selling business). The proof in this record however, showed that she had only ordered $639.94 worth of Blair products during a seven month time frame in question and had profited only $50 to $75 per week. Thus, based on the facts such explanation supposedly accounting for the large sum of cash was physically impossible. The jury obviously agreed.
¶26. McCord claimed that she had complained to the electric company about a power failure in January and that a service representative had come out to her home and advised her that the house was not grounded. However, at trial, Harold Smith, the manager of the electric company, testifying from a strict log, stated that upon searching the months of December, January, and February of 1990, that there was only one call from McCord, made in January. Smith stated that McCord’s sole complaint on that single occasion was noise on her outside light.
¶27. Obviously, the jury could have concluded that McCord wilfully and deliberately gave false answers to material questions in order to cover up the arson. McCord failed to object to the proof of false statements. M.R.C.P. 15(b), requires an objection to evidence on issues not plead and provides that upon objection, liberal amendment should be allowed. However, if there is no objection to evidence, it is waived and the issue is treated as tried by consent. Queen v. Queen, 551 So.2d 197, 200 (Miss.1989); PACCAR Financial Corporation v. Howard, 615 So.2d 583 (Miss.1993).
¶28. The majority also faults the trial court in its denial of McCord’s motion in limine concerning her attempt to limit the testimony by the Sheriff of Union County that an anonymous caller had telephoned him threatening to blow up McCord’s house and that he had seized $956 in cash from McCord on September 28th, as well as recent deposits of large sums of cash.
¶ 29. McCord’s possession of large sums of cash and deposit thereof with no reasonable explanation was material and presented a fair issue of fact for the jury. MRE 401 and 402, favor the admission of evidence that makes the existence of a fact of consequence more probable than not. In Foster v. State, 508 So.2d 1111, 1117 (Miss.1987), this Court stated, “If the evidence has any probative value at all, the rule favors its admission.” Id. The evidence at issue here is not one which brings Rule 403 into play, as that only occurs when the evidence tendered is “unfairly prejudicial.” Here, the issues of mo *95 tive, policy violation by conducting a business in her home, and more importantly false statements on policy examination are clearly, “facts of consequence,” hence admissible. The admission of this evidence was discretionary with the trial court and this Court will only reverse when the trial court has abused its discretion. Exclusion thereof under Rule 403 surfaces when prejudice “substantially outweigh,” probative value, and still, it is within the trial judge’s discretion to allow the evidence. Foster, at 1117. See also, Williams v. State, 543 So.2d 665, 667 (Miss.1989); Jenkins v. State, 507 So.2d 89, 92 (Miss.1987).
¶ 30. The evidence against McCord is overwhelming as to arson. Shelby Sparks voluntarily reported to the Union County Sheriff that on November 3, 1990, she had seen McCord pay Danny K. Steele and Phil Sparks, $300 to burn her house. She also stated that the two men on November 8, 1990, stated that they had burned McCord’s house. Shelby only attempted to change her version when Lisa Ross, who had been staying with McCord, threatened Shelby that she would be killed if McCord went to jail.
¶31. The arson investigator for Union County, Tommy Wilhite, accepted as an expert, testified that he found five different areas of spalling and concluded arson to be the cause of the fire. Cecil McCrory, an arson expert, testified he too found five areas of spalling. He found burned paper in a clean chimney flue that was open into the living room of the house. McCrory opined that a large quantity of accelerate was poured and lit with the burning paper through the flue in order to avoid flash over burn injuries. McCory took samples which were sent to Laura Waters, an expert of Applied Technical Services, Inc., who determined that the accelerate used in the fire was heavy aromatic naphtha, a substance used in the furniture business and which burns hotter than gasoline.
¶ 32. McCord had worked for a furniture manufacturer. Danny Steele had previously operated his own furniture business and Phil Sparks had worked for Bassett Furniture Company. Hence, while knowledge of the particular accelerate used here might not be one familiar to the average person, because of their employment in the furniture business, these three individuals did not fit the average person mold. According to Shelby Sparks, Phil was still employed there on November 2,1990, the day prior to McCord’s paying them to burn her house.
¶ 33. McCord claimed not to know how the fire started, then claimed that wiring might be the cause, since she had reported to the New Albany Electric Department that her lights went out in January 1990 and that they told her that her house was not grounded. Harold Smith, testifying from his log, stated that only one call was received from McCord during a three month period including January 1990, and she only complained that her outside light was making a noise.
¶ 34. McCord was in serious financial condition during 1990. She had only ordered $639.94 worth of Blair products from March until September 20, 1990. McCord admitted netting only $50 to $75 per week from her selling of Blair products. McCord was asked to produce bank account records and she gave a Bank of Mississippi checking account number. At trial, it was determined that the account number that McCord had given to her carrier representing it as her own, in fact, belonged to another Caroyln McCord. McCord, the plaintiff, had never had a checking account at Bank of Mississippi. McCord could not explain how she got that particular number. McCord’s banking records with Peoples Bank & Trust Company showed deposits of $3,344.63 including $2,300 in cash. She claimed $13,968 contents lost in the fire, all of which she claimed to have been purchased with cash, except for a refrigerator. McCord’s house payments were going up and on November 8, 1990, after withdrawing $60 cash she had only $166.54 remaining in her account.
135. Proof of arson is overwhelming, McCord had motive, and gave false statements during the investigation, all of which was material to the case at bar. Wilful in-cendiarism is a complete defense for the insurance carrier. There are three elements required, proof of an incendiary fire, motive of the insured, and evidence that the insured set the fire or procured its being set. McGo- *96 ry v. Allstate Ins. Co., 527 So.2d 632, 633 (Miss.1988). In the ease sub judice, it is clear that all three elements were sufficiently proven.
¶ 36.1 respectfully dissent.
PRATHER, P.J., and PITTMAN, J., join this opinion.