IN THE SUPREME COURT OF MISSISSIPPI

NO. 2006-KA-01706-SCT

*CHARISE FORD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2004 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | VIRGINIA LYNN WATKINS |
| | WILLIAM R. LABARRE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | ELEANOR JOHNSON PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/21/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., EASLEY AND GRAVES, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Charise Ford was found guilty of aggravated assault under Mississippi Code Section 97-3-7(2) and sentenced to seventeen years. Aggrieved, she appeals her conviction and sentence.

**Facts**

¶2.     On the morning of July 6, 2003, Charise Ford was working at the Comfort Inn where she was employed as the "breakfast bar hostess." Her duties kept her in the kitchen most of

the time, but she was also responsible for cleaning the lobby area where Misty Gaddy worked. Gaddy and Ford were friends, but for reasons unknown, became involved in a verbal altercation. The argument eventually turned physical, with Ford stabbing Gaddy in the eye with a steak knife. According to Gaddy, Ford was acting as the aggressor, but Ford claimed that she was acting in self-defense. No one witnessed the fight, but the maid, Willie O'Quinn, saw the immediate aftermath.

¶3.    Gaddy was working behind the front desk and Ford was mopping the lobby when the conflict began. According to Gaddy, Ford called someone on the lobby phone to pick her up from work. Ford hung up the phone, and as she was picking up the caution sign off the floor she mumbled "f—ing b—." Ford then walked back into the kitchen to finish cleaning up from breakfast.

¶4.    According to Ford, Gaddy provoked this incident by walking across the freshly mopped floor. Ford had asked Gaddy to use the back entrance to avoid the wet floor that she was mopping, but Gaddy responded "shut the hell up; you're not my m—er f—ing boss." Ford admitting calling Gaddy a "b—" and said that she called her boyfriend to pick her up early to avoid any further confrontation.

¶5.    Gaddy testified that after Ford returned to the kitchen, she left her desk to tell their boss about the incident. Gaddy went into the laundry room adjacent to the kitchen, where Willie O'Quinn was working. Gaddy did not see her boss, so she turned around to leave. As she left the laundry room, Gaddy said "if somebody don't leave me alone, I'm going to kick their a–." According to Gaddy, Ford met her at the kitchen door with her hand behind her back and asked Gaddy, "do you want to kick somebody's a–?" Ford then pulled a knife from behind

2

her back and held it at her side. At this point, Ford raised the knife in the air and began swinging both arms. Gaddy began pushing and kicking Ford, and Ford stabbed her once in the eye. Ford stood above Gaddy for a moment, ran into the kitchen, and then ran out the door into a waiting car.

¶6.     Ford's version of events was quite different. She testified that while she was in the kitchen, she overheard Gaddy say, "No, I'm not crazy, but I'm fixing to go in here and go crazy on somebody's a– ." Ford then went to the kitchen door to look for her ride, but Gaddy was blocking her way to the lobby. Ford testified that she returned to her duties, but when she tried to look for her ride again, Gaddy was still there. According to Ford, Gaddy screamed, "get out of my face," and grabbed Ford by the neck. Gaddy then began kicking and choking Ford. Unable to get away from Gaddy's grasp, Ford reached in her pocket and found a steak knife which she always carried with her at work. Ford testified that she struck Gaddy once, but did not know where. When Gaddy started to scream, Willie O'Quinn came out of the laundry room. Ford testified that she was in a state of shock at this point. She ran to get her purse from the kitchen cabinet, leaving the knife where her purse had been. Ford then left with her boyfriend, but said that she called the hotel later that day and talked to both her boss and the police about the incident.

¶7.     Willie O'Quinn testified that she ran out of the laundry room when she heard screaming. She saw Gaddy grabbing her eye and Ford standing close by with a knife in her hand. Contrary to Gaddy's testimony, O'Quinn said that Gaddy had not entered the laundry room earlier to look for their boss.

3

¶8.     The next day, Detective Keith Denson called Ford and asked her to come to the police station. At the station, Detective Denson read Ford her Miranda rights and asked her to make a formal statement. The statement was essentially the same as Ford's trial testimony, with Ford claiming that she was acting in self-defense.

¶9.     The jury found Ford guilty of aggravated assault, and the trial judge sentenced Ford to seventeen years in custody.

## Issues

¶10.    Ford raises various issues on appeal which fall into five categories: (1) jury instructions; (2) improper evidence; (3) prosecutorial misconduct; (4) insufficient evidence; and (5) excessive sentence.

## Discussion

**I. Jury Instructions.**

¶11.    On review, "[j]ury instructions are to be read together and taken as a whole with no one instruction taken out of context." *Austin v. State*, 784 So. 2d 186, 192 (Miss. 2001). "A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Howell v. State*, 860 So. 2d 704, 745 (Miss. 2003) (citing *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991)). "We will not find reversible error where the instructions actually given, when read together as a whole, fairly announce the law of the case and create no injustice." *Adkins v. Sanders*, 871 So. 2d 732, 736 (Miss. 2004) (internal citations and quotations omitted).

4

**(A) Self-Defense Instructions.**

¶12.    Ford argues that the jury instructions regarding self-defense incorrectly stated the law by requiring her to prove that the victim was acting with an intent to kill. At trial, the court granted the following instructions offered by the State:

> S-2: The Court instructs the Jury that to make an assault justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable [sic] to apprehend a design on the part of the victim *to kill her* or to do her some great bodily harm, and in addition to this she must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

(emphasis supplied).

> S-3: The Court instructs the Jury that a person may not use more force than reasonably necessary to *save her life* or protect herself from great bodily harm. The question of whether she was justified in using the weapon is for determination for the jury.
>
> The law tolerates no justification and accepts no excuse for an assault with a deadly weapon on the pleas of self defense except that the assault by the defendant on the victim was necessary or apparently so *to protect the defendant's own life* or her person from great bodily injury and there was immediate danger of such design being accomplished. The *danger to life* or of great personal injury must be or reasonably appears to be imminent and present at the time the defendant commits the assault with a deadly weapon. The term "apparent" as used in "apparent danger" means such overt, actual demonstration by conduct and acts of a *design to take life* or do some great personal injury as would make the assault apparently necessary to self preservation.

(emphasis supplied).

¶13.    Ford argues, as she did at trial, that she is only required to prove that she was in danger of serious bodily harm, not death, to claim self-defense for aggravated assault. The State counters that the use of the conjunction "or" remedies the alleged defect. This Court agrees.

5

Both instructions make clear that Ford could act in self-defense if she perceived the victim intended to kill *or* cause serious bodily harm. Therefore, these instructions did not misstate the law regarding self-defense.

**(B) Lesser-Included Offense Instruction.**

¶14. Ford argues that the trial court should have granted a jury instruction on the lesser-included offense of simple assault. When reviewing the denial of a lesser-included offense instruction, this Court "[takes] the evidence in the light most favorable to the accused and consider[s] all reasonable favorable inferences which may be drawn in favor of the accused from the evidence." *Ormond v. State*, 599 So. 2d 951, 961 (Miss. 1992) (quoting *Mease v. State*, 539 So. 2d 1324, 1330 (Miss. 1989)). "Only where the evidence could *only* justify a conviction of the principal charge should a lesser offense instruction be refused." *Mease*, 539 So. 2d at 1330 (emphasis in original) (citations omitted). To be entitled to a lesser-included offense instruction, Ford must point to evidence from which a jury could reasonably find her not guilty of aggravated assault and at the same time find her guilty of simple assault. *Ladnier v. State*, 878 So. 2d 926, 932 (Miss. 2004) (citing *Toliver v. State*, 600 So. 2d 186, 192 (Miss. 1992)).

¶15. Because Ford used a deadly weapon, there must be evidence that she acted negligently in causing harm to Gaddy: "A person is guilty of simple assault if he . . . negligently causes bodily injury to another with a deadly weapon." Miss. Code Ann. § 97-3-7(1) (Rev. 2006). In the present case, it is undisputed that Ford intentionally stabbed Gaddy. According to her own testimony, Ford struck Gaddy with the knife in self-defense:

She [Gaddy] grabbed me around my neck, and she went to choking me and choking me. And the only thing I did was grabbed her around her wrist and tried to get her arms away from around my neck.

And she went to kicking me and choking me and kicking me and choking me. And so I grabbed her arms, and I just kind of tussled with her to get her arms away from around my neck, but I couldn't get her away from around my neck.

So I went to feeling in my pockets. I had on a scrub with two pockets on it, and I went to feeling off in my pockets. And once I felt off in my pockets I felt the knife, and I came out with the knife, and I struck her one time.

There is simply no evidence in the record that Ford acted negligently. Therefore, because the evidence can only support a charge of aggravated assault, the trial court did not err in refusing to grant a jury instruction on the lesser-included offense of simple assault.

## II. Admissibility of Evidence.

¶16.    The standard of review governing the admissibility of evidence is whether the trial court abused its discretion. *Peterson v. State*, 671 So. 2d 647, 655 (Miss.1996) (citing *Baine v. State*, 606 So. 2d 1076, 1078 (Miss. 1992); *Wade v. State*, 583 So. 2d 965, 967 (Miss. 1991)). This Court must first determine if the proper legal standards were applied. *Peterson*, 671 So. 2d at 655-56 (citing *Baine*, 606 So. 2d at 1078). If the trial court applied an improper legal standard, resulting in prejudice to the accused, then a reversal is warranted. *Id.* at 656 (citing *Parker v. State*, 606 So. 2d 1132, 1137-1138 (Miss. 1992)).

**(A) Testimony Regarding the Injury.**

¶17.    Ford argues that the trial court erred in admitting testimony from Gaddy's treating physician, Dr. Hussein Wafapoor, on the nature and extent of Gaddy's injury. Ford argues that this evidence was irrelevant and highly prejudicial.

7

¶18.    Before trial, the defense moved to prohibit testimony from Dr. Wafapoor regarding the extent of Gaddy's injury, arguing that the State was not required to prove that the injury was serious in nature.  The trial court granted the motion in part, ruling that Dr. Wafapoor could testify about the injury but that he could not testify about any rehabilitation, such as medical expenses, recovery time, and number of surgeries.

¶19.    At trial, Dr. Wafapoor testified that Gaddy's injury was severe as she had lost more than ninety percent of her vision in the injured eye.  He stated that a sharp object had penetrated the eyelid and eye about six millimeters, ultimately hitting the nasal bone.  When asked what amount of force was used, Dr. Wafapoor testified that the injury was "self-explanatory," and that "you can assume there was some force."

¶20.    Ford argues that this testimony should have been excluded as it was irrelevant and highly prejudicial under Mississippi Rules of Evidence 401, 402, and 403.  Because "[e]vidence which is not relevant is not admissible," our first inquiry is whether the evidence was relevant to proving the State's case.  M.R.E. 402; *Johnson v. State*, 475 So. 2d 1136, 1144 (Miss. 1985).  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  M.R.E. 401.  Under Mississippi Code Section 97-3-7(2)(b), "a person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means *likely to produce death or serious bodily harm*."  (emphasis supplied).  While Ford is correct that the State need not prove "serious" bodily harm under the statute, the extent of

8

Gaddy's injury is relevant to prove that the bodily harm was caused by means "likely to produce . . . serious bodily harm." Miss. Code Ann. 97-3-7(2)(b) (Rev. 2006).

¶21.    This Court has held that "[t]he essence of the offense of aggravated assault is that the accused has knowingly caused bodily injury to another with a deadly weapon likely to produce death or serious bodily harm. In this setting it is competent for the victim to describe the nature and extent of the injuries she has received." *Cooley v. State*, 495 So. 2d 1362, 1364 (Miss. 1986). *See also Norris v. State*, 490 So. 2d 839, 848 (Miss. 1986). Likewise, medical testimony on the extent of an injury is relevant to proving an essential element of aggravated assault.

¶22.    We next determine whether the evidence was more prejudicial than probative. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." M.R.E. 403. Ford does not point to any specific testimony from Dr. Wafapoor, and argues simply that the evidence was "inflammatory and prejudicial." Dr. Wafapoor's testimony was relevant on the issue of whether Ford used force likely to produce serious bodily harm, and the probative value of this brief testimony was not "substantially outweighed by the danger of unfair prejudice." Thus, it cannot be said that the trial judge abused his discretion in allowing this evidence, and this argument is without merit.

### (B) Testimony in Violation of Pre-Trial Order.

¶23.    Ford also argues that the trial court failed to abide by its pre-trial ruling restricting Dr. Wafapoor from discussing Gaddy's rehabilitation. Again, Ford does not point to any specific testimony, and none of Dr. Wafapoor's testimony addresses the victim's rehabilitation.

9

Furthermore, defense counsel never objected to his testimony on the ground that it violated the trial court's pre-trial order. For these reasons, this issue is without merit.

**(C) Testimony Regarding Cause of Injury.**

¶24. Ford's final argument regarding Dr. Wafapoor is that he should not have been allowed to testify that a knife could have caused Gaddy's injury. At trial, defense counsel requested that the court prohibit the prosecution from asking if the knife in evidence caused Gaddy's injury. The court held a hearing and ruled that Dr. Wafapoor could testify that Gaddy's injury was consistent with a knife wound, but that he could not testify that any particular type of knife was used. On direct examination, Dr. Wafapoor was asked, "would a knife be consistent with the penetrating wound that you saw to Misty Gaddy's eye?" to which he responded, "yes."

¶25. On appeal, Ford argues that this testimony was prejudicial, speculative, and outside the doctor's area of expertise. Ford cites *Edmonds v. State*, 955 So. 2d 787 (Miss. 2007), *cert. denied*, 2007 U.S. LEXIS 12868 (Dec. 3, 2007), and *Foster v. State*, 508 So. 2d 1111 (Miss. 1987). In each case this Court found that expert testimony regarding the manner of the victim's death was highly speculative and misled the jury on an essential, disputed fact. *Edmonds*, 955 So. 2d at 792 (expert testimony that wound was consistent with two people holding gun held inadmissable); *Foster*, 508 So. 2d at 1118 (expert testimony that knife found in defendant's car could have caused victim's wound held more prejudicial than probative).

¶26. The problem with Ford's argument is that the cause of Gaddy's injury is undisputed. Unlike *Edmonds* and *Foster*, in the present case there is no danger of misleading the jury when the fact in question is admitted by the defendant.

10

**(D) Photographs of the Injury.**

¶27.    Ford next argues that the trial court abused its discretion by allowing the State to introduce two photographs of the injury.  Again, Ford argues that this evidence was irrelevant and prejudicial because the State was not required to prove "serious" bodily injury.  However, as with Dr. Wafapoor's testimony, the photographs were relevant to prove that Ford used "means likely to produce death or serious bodily harm."  Miss. Code Ann. 97-3-7(2)(b) (Rev. 2006).  Additionally, the two Polaroids are small and blurry and are not particularly gruesome.  *See Woodward v. State*, 726 So. 2d 524, 534-535 (Miss. 1997) ("Photographs of bodies may nevertheless be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in such a way as to be overly prejudicial or inflammatory." (quoting *Sudduth v. State*, 562 So. 2d 67, 70 (Miss. 1990)).  The trial court did not abuse its discretion by finding that the probative value of these photographs outweighed any danger of unfair prejudice.

**(E) Photographs of the Hotel Doors.**

¶28.    Ford argues that the trial court erred in admitting photographs of the outside hotel doors because they lacked the appropriate foundation.

¶29.    In her statement to the police, which was admitted during Detective Denson's testimony, Ford said that her boyfriend had witnessed the incident while parked in front of the hotel.  However, Detective Denson testified that when he visited the crime scene around noon, he could not see the kitchen area from the outside because of a glare on the glass doors.  The State then introduced two photographs of the outside doors, which depicted the sun's glare on the glass.  Ford objected, arguing that these photographs were inadmissible as they lacked

11

a proper foundation. The trial judge allowed the photographs to be admitted because the detective testified that they accurately represented the doors as they appeared during his investigation.

¶30. Although Ford briefly references Mississippi Rules of Evidence 401, 402 and 403, her argument is based on Rule 901, which governs authentication: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." M.R.E. 901(a). Because Detective Denson testified that the photographs accurately represented the hotel doors at the time of his investigation, the photographs were properly authenticated and the trial court did not err by overruling Ford's objection. *See Smith v. State*, 792 So. 2d 343 (Miss. Ct. App. 2001) (officer's testimony that photographs accurately depicted the victim on the night of assault was sufficient authentication).

**III. Closing Arguments.**

¶31. Ford argues that improper remarks made during the State's closing argument unduly prejudiced the jury and denied her fundamental right to a fair trial. Attorneys are allowed substantial leeway in their arguments, provided their arguments remain within the facts in evidence, reasonable deductions and conclusions that may be drawn from the facts, and the application of the law to the facts. *Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991) (citing *Craft v. State*, 271 So. 2d 735, 737 (Miss. 1973) and *Davis v. State*, 530 So. 2d 694, 701-02 (Miss. 1988)). "The test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by

prejudice." **Logan v. State**, 773 So. 2d 338, 350 (Miss. 2000) ( citing **Dunaway v. State**, 551 So. 2d 162, 163 (Miss. 1989)).

¶32. Throughout the State's closing arguments, defense counsel made several objections. The defendant makes reference to all of the objections in her brief, but does not explain how each comment was prejudicial. Without any explanation, it is not readily apparent how the comments infringed Ford's right to a fair trial. After reading the closing arguments, only one comment appears improper on its face:

> State: Take all the instructions, and look at her statement. Because let me tell you what guilty people do. *Guilty people flee the scene* –
>
> Defense: Your Honor, we're going to have to object. There's no instruction on the law on flight from the scene in this case.
>
> State: Your Honor, she left the scene.
>
> Court: She can argue she left the scene but not what guilty people do. Sustained as to that.
>
> Defense: I'm sorry, but flight is not an instruction in this case, and they can't argue that.
>
> State: I'm not arguing flight.
>
> Court: Sustained as to that.
>
> Defense: Thank you.

(emphasis supplied).

¶33. While the statement "guilty people flee" may have been improper, Ford's objection was sustained, and she did not ask for a cautionary instruction. This Court has held "where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error." **Minor v. State**, 831 So. 2d 1116, 1123 (Miss. 2002)

13

(quoting *Perry v. State*, 637 So. 2d 871, 874 (Miss. 1994)). Because Ford did not ask the judge to admonish the jury, she is barred from arguing any error on appeal.

¶34. Ford also argues that the trial judge showed "a dangerously biased position" by "sustain[ing] virtually every objection made by prosecutors during defense counsel's closing and overrul[ing] virtually every defense objection made on the same point." Ford references three objections made by the State during defense counsel's closing arguments but does not explain why they should have been overruled. Without further explanation or citation to law, the Court cannot find any error or judicial bias which would warrant reversal.

## IV. Insufficient Evidence.

¶35. When reviewing a case for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The evidence must show "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Id.* (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). If "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id.*(quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶36. Ford argues that the State failed to produce sufficient evidence that she did not act in self-defense. The crux of her argument is that Misty Gaddy was not a credible witness. This

14

Court has repeatedly stated that the jury is the sole judge of the credibility of the witness. *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980). "[W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the state's witnesses and the appellant's witnesses, including the appellant himself." *Id.* Because Gaddy's testimony was sufficient to prove that Ford was the aggressor, and therefore committed aggravated assault, this assignment is without merit.

## V. Excessive Sentence.

¶37. Following the verdict, Ford asked for a pre-sentence investigation. The trial judge denied the request, stating that the court was aware the defendant had children and did not think a report was necessary. The judge then sentenced Ford to seventeen years – three years less than the maximum – finding it to be "one of the worst aggravated assaults" the court had presided over. In post-trial hearings, the trial judge reiterated the severity of the crime and the permanence of the injury.

¶38. Ford argues that her sentence was excessive and has characterized this as a violation of "the fundamental rights of equal protection and due process of law." Her analysis actually focuses on the right to equal protection, the right to a trial by jury, and the prohibition against cruel and unusual punishment. U.S. Const. amends. VI, VIII and XIV, § 1; Miss. Const. art. 3, § 28.

### A. Proportionality.

¶39. It is well established that this Court will not disturb a sentence where it does not exceed the maximum period allowed by statute. *Williams v. State*, 794 So. 2d 181, 188 (Miss. 2001)

15

(citing *White v. State*, 742 So. 2d 1126, 1135 (Miss. 1999)). However, a sentence that is grossly disproportionate to the crime committed may be reviewed on Eighth Amendment grounds. *Id.* Unless a "threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" the Court will not engage in the analysis set forth in *Solem v. Helm*, 463 U.S. 277, 292, 77 L. Ed. 2d 637, 103 S. Ct. 3001 (1983). *White*, 742 So. 2d at 1135 (citing *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996)).

¶40.   Although seventeen years is a severe sentence, it does not lead to an inference of "gross disproportionality."  Aggravated assault with a deadly weapon is a serious, violent crime, and a sentence of seventeen years does not meet the threshold requirement for *Solem* proportionality review.

¶41.   Ford correctly points out that this Court has vacated and remanded sentences even though an initial comparison of the crime and the sentence did not suggest "gross disproportionality." *See White*, 742 So. 2d 1126; and *Davis v. State*, 724 So. 2d 342 (Miss. 1998). Both White and Davis were first-time offenders who were convicted of selling a small amount of cocaine and sentenced to the maximum term of sixty years. *White*, 742 So. 2d at 1137; *Davis*, 724 So. 2d at 343. This Court vacated their sentences, finding that there was nothing in the records to demonstrate the imposition of the maximum sentence. *White*, 742 So. 2d at 1137; *Davis*, 724 So. 2d at 344. Because the trial judge did not use discretion in and simply opted for the maximum penalty, this Court remanded the cases for reconsideration. *White*, 742 So. 2d at 1137-38; *Davis*, 724 So. 2d at 344.

¶42.   The present case is distinguishable. Even though Ford was a first-time offender and the trial judge denied the request for a pre-sentence investigation, he repeatedly expressed

16

concerns about the severity of the crime. Additionally, unlike the sale of a controlled substance, aggravated assault is a violent crime, which carries a sentence of up to twenty years. Miss. Code Ann. § 97-3-7(2) (Rev. 2006). Unlike Davis and White, Ford was not sentenced to the maximum penalty.

**B. Jury Trial.**

¶43.    Ford also argues that she was denied her Sixth Amendment right to a jury trial when the judge made specific findings of egregiousness in sentencing her to seventeen years. The general rule is "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435,455 (2000).

¶44.    Ford cites *Cunningham v. California*, — U.S. —, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), in which the United States Supreme Court invalidated California's determinate sentencing law. *Id.* Upon a jury verdict of guilty, the California law required that the defendant be sentenced to twelve years. *Id.*, 127 S.Ct. at 860. However, if the judge found certain aggravating circumstances by a preponderance of the evidence, the judge could increase the sentence to sixteen years. *Id.* Relying on the Court's Sixth Amendment jurisprudence, including *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) and *Apprendi*, 530 U.S. 466, the Court held that the California statute violated a defendant's right to a jury trial because it allowed the trial judge to impose a greater sentence beyond the "statutory maximum." *Cunningham*, 127 S. Ct. at 871. The Court noted that the "relevant statutory maximum is not the maximum sentence a judge may impose after

17

finding additional facts, but the maximum he may impose *without* any additional findings."

***Id.***, 127 S. Ct. at 860 (quoting ***Blakely***, 542 U.S. at 303-04 (2004) (emphasis in original)).

¶45.     ***Cunningham*** is clearly distinguishable because under Mississippi Code Section 97-3-7(2), the "relevant statutory maximum" is twenty years.  The statute allows a trial judge to impose a sentence of up to twenty years "without any additional findings." ***Cunningham***, 127 S. Ct. at 871.  Thus, the seventeen-year sentence does not violate Ford's right to a trial by jury because it is not "beyond the prescribed statutory maximum." ***Id.***

   **C. Equal Protection.**

¶46.     Ford also argues that her right to equal protection was violated because her sentence exceeds other sentences given for aggravated assault convictions both in Hinds County and other jurisdictions.  Ford includes two charts in her brief.  The first chart lists twenty-three other sentences for aggravated assault handed down by the Hinds County Circuit Court during the October 2004 term.  Certified copies of these sentences are included in the record.  The second chart lists eleven sentences for aggravated assault handed down during the same time period in Harrison and Washington Counties.

¶47.     Twenty of the twenty-three sentences in Hinds County were issued by the same trial judge who sentenced Ford.  These sentences range from five to twenty years, with zero to twenty years to serve.  The average sentence issued by this judge is 11.8 years, and the average time to serve is 7.25 years.

¶48.     Ford argues that this record demonstrates "invidious discrimination" because the trial judge improperly sentenced her "in comparison with other criminal defendants similarly situated." She specifically refers to the case of Cedric Stewart, who was sentenced to fourteen

18

years for aggravated assault with a handgun. The record contains a certified copy of the transcript for Stewart's guilty plea. Stewart shot his unarmed victim in the buttocks, and the bullet exited through the victim's penis. The incident occurred in a residential area with children watching, and the victim was permanently injured. Ford argues that this crime was much worse than her act of alleged self-defense, but the same judge sentenced Stewart to three years less than Ford.

¶49. Beyond the heavy burden required to prove discriminatory intent – *see **Scott v. State***, 878 So. 2d 933, 993 (Miss. 2004) – the fatal flaw with Ford's equal protection argument is that she does not tell this Court against what class of persons the trial judge was allegedly discriminating. "'Equal protection' . . . emphasizes disparity in treatment by a State *between classes* of individuals whose situations are arguably indistinguishable." ***Ross v. Moffitt***, 417 U.S. 600, 609, 94 S. Ct. 2437, 2443, 41 L. Ed. 2d 341, 350 (1974). For example, she may have argued that she received a harsher sentence because she was black and her victim was white. *See **Scott***, 878 So. 2d at 994 (examining claim that black defendants who kill white victims are 500% more likely to receive the death penalty). However, because Ford does not indicate to this Court that she belonged to any certain class and that she received unequal treatment because of her class status, equal protection analysis cannot apply.

### Conclusion

¶50. For the foregoing reasons, the Court finds no reversible error, and Ford's conviction and sentence are affirmed.

¶51. **CONVICTION OF AGGRAVATED ASSAULT WITH A WEAPON AND SENTENCE OF SEVENTEEN (17) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

19

SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.