511 So.2d 144 (1987)
Sabrina SUAN
v.
STATE of Mississippi.
No. 57892.
Supreme Court of Mississippi.
August 5, 1987.
*145 Bruce B. Smith, Magee, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appeal from a conviction of the crime of escape presents two issues. On the first, we hold that one who furnishes and drives the getaway car has committed the statutorily defined crime of escape. Second, however, because the Circuit Court unreasonably restricted defense cross-examination of the chief prosecution witness  regarding the matter of leniency extended in exchange for testimony, we reverse and remand.

II.
Prior to June of 1985 Louis Mitchell Haynes was serving a sentence of three years imprisonment upon conviction of the crime of grand larceny. Haynes was being held at the Simpson County Community Work Center (CWC) in Magee, having been transferred there by the Mississippi Department of Corrections, following a tour of duty at Parchman. On June 4, 1985, between the hours of 8:00 and 10:00 a.m., Haynes escaped.
Haynes had told Eddie Grammer, a fellow prisoner, that he was planning to escape and go to Pensacola, Florida. On the morning of June 4 Grammer saw a red Chevrolet pickup truck arrive and then saw Haynes enter the truck and leave. Important for today's case, Grammer got a good look at the truck's driver, whom he has identified as Sabrina Suan. Grammer knew Suan, for he had seen her on visiting days when she came to see Haynes.
Sabrina Suan was the Defendant below and is the Appellant here.
Haynes and Suan made their way to Pensacola and were arrested three or four days later. In the presence of Simpson County Sheriff Lloyd Jones, Suan remarked to Haynes, "I didn't expect to get in any trouble when I picked you up."
Prior to the escape incident, Suan lived and worked as a barmaid in Pensacola. She testified that on June 4, 1985, she went to the beach arriving home around 3:30 p.m. She had been home only a few minutes when Haynes arrived, told her he had been paroled and hitchhiked to Pensacola. Suan had not seen him for three weeks, when she had last visited him at the Simpson County CWC in Magee. She does not own a red pickup truck. Suan had previously lived with Haynes prior to his conviction, wrote him letters while he was confined, and he called her twice a week while he was at CWC.
On August 5, 1985, the Simpson County Grand Jury returned an indictment charging *146 Suan with the crime of aiding the escape of a felon. Miss. Code Ann. § 97-9-29 (1972). On March 27, 1986, the case was called for trial in Circuit Court sitting in Mendenhall, Mississippi. On the following day the jury returned a verdict finding the Defendant "guilty of aiding and assisting a jail escape." The Circuit Court thereupon sentenced Suan to serve a term of five years imprisonment. In due course thereafter, Suan filed a motion for judgment of acquittal notwithstanding the verdict, or, in the alternative, for a new trial. On April 2, 1986, that motion was overruled and denied. Suan thereupon perfected her appeal to this Court.

III.
Sabrina Suan's first assignment of error is that the evidence offered by the prosecution was legally insufficient to undergird a valid verdict of the guilty. Suan in substance is charging that the Circuit Court erroneously denied her motion for judgment of acquittal notwithstanding the verdict which, of course, served as a renewal of her request for a peremptory instruction of acquittal made at the conclusion of all of the evidence.
Suan has been charged, tried and convicted under one of our several escape statutes, Miss. Code Ann. § 97-9-29 (1972), which, in relevant part, provides:
Every person who shall, by any means whatever, aid or assist any prisoner lawfully detained in the penitentiary, or in any jail or place of confinement for any felony, in an attempt to escape therefrom, whether such escape be effective or not, ..., shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding ten years.
Suan says she did nothing which violated Section 97-9-29. Taking the evidence, as she must, in the light most consistent with the verdict, Suan argues that at most the prosecution proved that she drove the getaway car. Her point is that by this time Haynes had already escaped. She did not aid him or assist him in his escape because he had completed his escape by the time she rendered her aid or assistance, or so Suan seeks to persuade us.
We construe a statute. Did Sabrina Suan "aid or assist" Louis Mitchell Haynes "... in an attempt to escape?" We are, it is true, without evidence that Suan assisted Haynes in scaling the prison walls, nor have we evidence that she smuggled into Haynes' place of confinement any weapon or instrumentality of escape. But it defies common sense to suggest that her providing him with a vehicle in which to alight once he was beyond the walls was not a very great aid to Haynes in the course of his attempt to escape.
We have no need to consider whether aiding one at a point temporally and geographically remote from the point of escape might constitute a violation of the statute. Whether Fauchelevent's secreting Jean Valjean in a convent long after his November 1823 bolt to freedom would be a violation of Section 97-9-29 is not before us, although the Javerts of the world would surely press the point. Sabrina Suan's assistance to Louis Mitchell Haynes was of sufficient immediacy to fall within the sensible reading of the statute.
The evidence of Suan's guilt is otherwise sufficient that the Circuit Court correctly denied her request for a peremptory instruction of acquittal and as well her subsequent motion for judgment of acquittal notwithstanding the verdict. See, e.g., Miller v. State, 492 So.2d 978, 981 (Miss. 1986); Pryor v. State, 349 So.2d 1063, 1064 (Miss. 1977).

IV.
Suan next assigns as error the Circuit Court's restrictions placed upon cross-examination of the witness Eddie Grammer. Specifically, Suan's attorney sought to show that Grammer had been involved recently in other criminal conduct but had not been prosecuted. The apparent inference was that the prosecution had extended leniency to Grammer in exchange for his testimony against Suan.
As reflected in the record, the point arose in this way. While on cross-examination, Grammar stated that he was out of *147 prison on parole. Defense counsel sought to establish that, if he got into further trouble with the law, his parole could be revoked and he could be returned to prison. The following sequence then occurs:
Q. BY MR. SMITH [By Suan's Attorney]: Okay, how many years do you have to serve on your parole time?
A. [By Witness Grammer] Two.
Q. Two? So, if you were to get in trouble or anything, they could revoke that parole and put you back in prison, couldn't they?
A. Yes, sir.
Q. As a matter of fact, Mr. Grammer, a few months ago you got in trouble at the Center again over some stolen property, is that not correct, with James Lewis Flynt?
BY MR. WEBB:
Your Honor, I object to this.
BY THE COURT:
I assume that you're driving at this integrity?
BY MR. SMITH:
Yes, Your Honor.
BY THE COURT:
Well, I'll permit you to ask him that question but not go beyond that.
BY MR. SMITH:
Okay.
Q. You got into some trouble over some stolen merchandise that James Lewis Flynt stole in a burglary of a house?
BY MR. WEBB:
Your Honor, I'm going to object to this unless it deals with a conviction of a crime. I think that someone getting into trouble or somebody arrested or something, it's not relevant. He has a right to the question: were you convicted of a crime? But going into episodes of getting in trouble, I'm going to object to.
BY MR. SMITH:
Your Honor, may we approach the bench on this?
(An off-the-record discussion was had by Court and Counsel at the bench out of the hearing of the Jury and the reporter.)
Suan's counsel then began another line of questioning.
On this appeal, Suan urges that her attorney was attempting to establish that Grammer had received favored treatment in the form of the prosecution's decision not to prosecute him for his role "over some stolen merchandise." Suan sought to establish that Grammer had a motive for testifying falsely, and that if he did not testify falsely, he would be subject to parole revocation proceedings and returned to prison.
The State's initial response is that the point was not adequately preserved for review. Without question, the matter would be clearer if the off-the-record proceedings had been transcribed. And because this is not the first time we have confronted this sort of situation, we direct without equivocation that court reporters should never fail to preserve for record at-the-bench or chambers conferences following objections such as this have been made. The trial judge has the responsibility to enforce this directive.
Our law decrees no procedural fatality because of the absence of a proffer in the record of exactly what Grammer's answers would have been. Where a party is improperly denied cross-examination, he is not required to make the proffer of the witness' testimony such as would otherwise be required, as we have so held on several recent occasions. See Horne v. State, 487 So.2d 213, 216 (Miss. 1986); Valentine v. State, 396 So.2d 15, 17 (Miss. 1981); see also Harris v. Buxton T.V., Inc., 460 So.2d 828, 833-34 (Miss. 1984). We regard the nature and purpose of the abortive defense cross-examination apparent from the context. See Murphy v. State, 453 So.2d 1290, 1293-94 (Miss. 1984). See Rule 103(a)(2), Miss.R.Ev., eff. January 1, 1986. We move to a consider of the merits.
Two related premises established in our law coalesce here. Evidence that a material witness has received favored treatment at the hands of law enforcement authorities, particularly where that witness is himself subject to prosecution, is probative *148 of the witness' interest or bias and may be developed through cross-examination or otherwise presented to the jury. See Malone v. State, 486 So.2d 367, 368-69 (Miss. 1986); Hall v. State, 476 So.2d 26, 28 (Miss. 1985); Barnes v. State, 460 So.2d 126, 131 (Miss. 1984); King v. State, 363 So.2d 269, 274 (Miss. 1978); Sanders v. State, 352 So.2d 822, 824 (Miss. 1977).
More generally, one accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and especially is this so with respect to the principal prosecution witness. See Foster v. State, 508 So.2d 1111 (Miss. 1987); Miskelley v. State, 480 So.2d 1104, 1108-12 (Miss. 1985); Myers v. State, 296 So.2d 695, 700 (Miss. 1974). Not only is this right secured by our rules of evidence, see Rule 611(b), Miss.R.Ev., it is a function of the confrontation clauses of federal and state constitutions.
From a review of the proceedings below, it appears that the Circuit Court was of the view that the sole function of inquiry into prior criminal activity of the accused was to establish prior convictions and thereby to impeach the witness. To be sure, our law has for years allowed impeachment of a witness on credibility grounds by showing prior convictions, although the rule is now somewhat modified. See Rule 609, Miss.R.Ev. The impeachment sought here, however, was not of that sort. Here the defense sought to show that Eddie Grammer had been involved in criminal activity but had not been prosecuted. The point was that Grammer's neck was on the line if he did not testify in a manner pleasing to the prosecution. This Suan was entitled to show  or at least to attempt to show. The Circuit Court erred when it refused to allow such cross-examination. Because Grammer was the principal witness for the State, and because so much of the prosecution's case turned upon his credibility, the error is of reversible proportions.
REVERSED AND REMANDED FOR A NEW TRIAL
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.