# IN THE COURT OF APPEALS 04/23/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-KA-00219 COA

**STERLING WENDALL ALLEN, JR.**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. KOSTA N. VLAHOS

COURT FROM WHICH APPEALED: CIRCUIT COURT OF HARRISON COUNTY

ATTORNEY FOR APPELLANT:

TOM SUMRALL

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: JOLENE M. LOWRY

DISTRICT ATTORNEY: STEPHEN B. SIMPSON

NATURE OF THE CASE: CRIMINAL - FELONY CHILD ABUSE AS A HABITUAL OFFENDER

TRIAL COURT DISPOSITION: GUILTY - SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT HOPE OF PAROLE OR PROBATION

BEFORE BRIDGES, P.J., BARBER, AND McMILLIN, JJ.

BARBER, J., FOR THE COURT:

Sterling Wendall Allen, Jr. appeals from his conviction for felony child abuse as a habitual offender. For this offense, Allen received a twenty-year prison sentence without the possibility of parole or probation. Finding no reversible error in the proceedings below, we affirm.

I. FACTS

Rhonda Pettinger and J.M. worked in a Waffle House restaurant located in Gulfport. From time to time, Pettinger would visit, care for and/or babysit J.M.'s fifteen-month old son, M.M. On February 9, 1993, Pettinger went to J.M.'s apartment. She found M.M. in a sick and severely battered condition, his body covered with bruises from head to foot.

Under the guise of taking M.M. to her house to spend the night, Pettinger prevailed upon J.M. to let her leave the apartment with the child. Instead of going home, however, Pettinger took M.M. to work with her. Once there, she showed the child to her co-workers and her manager. Because M.M. appeared to be virtually "lifeless," Pettinger's manager convinced her to contact the Department of Human Services. After Pettinger had done so, M.M. was taken to Gulfport Memorial Hospital. At the hospital, M.M. underwent surgery to repair an abdominal hematoma and a rupture to his intestines caused by a severe, external blow.

At the time that Pettinger rescued M.M., Allen was J.M.'s live-in boyfriend. Allen and J.M. had been living in this arrangement since October of 1992.

On June 4, 1993, a Harrison County grand jury indicted Allen and J.M. for felony child abuse under section 97-5-39 of the Mississippi Code. In view of his two previous felony convictions, Allen was also indicted under section 99-19-81 of the Mississippi Code as a habitual offender.

J.M. eventually pled guilty to the reduced charge of felony child neglect and received a two-year sentence. As part of this plea bargain, J.M. also agreed to testify against Allen at his trial, which was held on December 7-8, 1994.

At trial, the defense attempted to show that J.M. was the person who had abused and injured M.M. and that Allen was not the guilty party. Thus, prior to trial, during a hearing held in connection with Allen's motion for continuance, defense counsel gave notice that he wanted to introduce evidence showing that J.M. may have abused M.M. long before Allen had ever moved in with her. Defense counsel indicated that he had evidence that J.M. abused M.M. at least six months prior to the time that Pettinger discovered him on February 9, 1993. One portion of this evidence was to be introduced through a statement made by J.M.'s neighbor, Lannette Dobbins, to the Gulfport police to the effect that she had witnessed J.M. beat and/or neglect M.M. on many previous occasions. In the alternative, the defense proposed to have the trial continued until such time that Dobbins's presence at trial could be obtained.

The trial judge ruled that because the prosecution was not going to be permitted to go into any abuse

occurring prior to November 1, 1992, the defense would also not be allowed to probe into such incidents. In fact, the judge ruled that any inquiry into the abuse of M.M. that may have occurred prior to the two weeks preceding February 9, 1993, would be prohibited. In making this ruling, the judge stated that evidence pertaining to abuse that occurred before this time was irrelevant and immaterial to the question of whether Allen inflicted the injuries on M.M. that were discovered by Pettinger on February 9, 1993. Accordingly, the judge refused to continue the trial in order to obtain Dobbins' presence; he refused to allow admission of Dobbins' statement to the police, and he prohibited cross-examination of J.M. having to do with incidents that occurred previous to this two-week window.

At the conclusion of Allen's trial, the jury found Allen guilty and the judge sentenced him to a twenty-year prison term. His subsequent motion for a new trial was denied on February 16, 1995. He now appeals.

II. DISCUSSION

a) Did the Trial Court Err in Not Allowing Evidence of J.M.'s Past Acts of Abuse to Be Admitted?

Allen contends that the trial judge erred in not admitting evidence tending to prove that J.M. previously abused and injured M.M. In support, Allen argues that Rules 404(b) and 406 of the Mississippi Rules of Evidence render such evidence admissible.

An issue raised for the first time on appeal is procedurally barred from consideration where the appellant either cites support for his position which is different from that which he raised at trial or where he has completely failed to raise the issue at trial. *Holland v. State*, 587 So. 2d 848, 868 n.18 (Miss. 1991). During the course of oral argument on Allen's motion for continuance, the trial judge asked the defense whether the ground asserted for going into past incidents of abuse by J.M. fell within Rule 404 or Rule 406, provisions of the Mississippi Rules of Evidence that concern the admissibility of character evidence. The defense consistently denied that these two rules were applicable and insisted instead that relevance was the appropriate ground. Because the defense did not assert the applicability of Rule 404 or 406 at the trial level, we hold that the issues raised in connection with these rules are procedurally barred, and we will not consider them.

b) Did the Trial Court Err in Not Granting Allen's Motion for a Continuance and in Not Admitting Evidence of Dobbins' Statement to Investigating Authorities?

As noted above, the trial judge ruled that evidence of abuse and injury to M.M. occurring prior to two weeks before February 9, 1993, was irrelevant and immaterial to the issue of who perpetrated the injuries that were discovered by Pettinger on February 9. On the basis of this ruling, the trial judge refused to grant Allen's motion for a continuance so that he could procure the presence of Dobbins, who was in Florida at the time of trial. The judge also refused Allen's alternative request that the judge admit the police narrative of Dobbins' statement to the effect that Dobbins had witnessed J.M. abuse and/or neglect the child on previous occasions.

Relevancy and admissibility of evidence are largely within the discretion of the trial court, and we will reverse only where there has been an abuse of that discretion. *Hentz v. State*, 542 So. 2d 914, 917 (Miss. 1989). The grant or denial of a continuance also lies within the discretion of the trial judge. *Norman v. State*, 385 So. 2d 1298, 1301 (Miss. 1980). Bearing these principles in mind, we hold that the trial judge did not abuse his discretion in ruling that evidence pertaining to any abuse of M.M. that may have occurred some several months prior to the abuse discovered by Pettinger on February 9, 1993, was irrelevant. We are of this opinion even though Allen wanted to present such evidence for the purpose of showing that J.M. and not Allen was the party that abused M.M. on or near February 9. For related reasons, we also hold that the judge did not abuse his discretion in refusing to grant a continuance so that Dobbins' presence at trial could be obtained and in not allowing evidence of Dobbins' statement to come before the jury.

c) Was the Trial Court's Refusal to Suppress Allen's Inculpatory Statement Error?

During the course of investigating the abuse suffered by M.M., Allen gave an inculpatory verbal statement to two members of the Gulfport Police Department who interrogated him. In this statement, Allen allegedly admitted that he had struck M.M. on numerous previous occasions. Allen further recalled that on one of these occasions, he had hit M.M. so hard that he thought that he had killed him. Allen also admitted that he was prone to violent outbursts and that, as a result, he should not be around children.

Prior to trial, Allen moved to suppress evidence of this statement on the ground that although the police had informed him of his *Miranda* protections prior to interrogating him, he had not in fact waived his constitutional right to have an attorney present and that he only made the statement in response to threatening and coercive tactics utilized by the police. Put succinctly, Allen asserted that his inculpatory statement was coerced and that he did not voluntarily waive his constitutional right to have an attorney present at his interrogation.

The trial judge held an evidentiary hearing in connection with the motion. Allen and both of the police officers testified and were cross-examined. The trial judge denied the motion to suppress. Allen now asserts that this ruling was erroneous.

Where the voluntariness of a confession has been put in issue, the State has the burden of proving voluntariness beyond a reasonable doubt. *Neal v. State*, 451 So. 2d 743, 753 (Miss. 1984). On appeal, the inquiry is two-fold: Did the trial judge apply the correct legal standard in his evaluation of the facts and, if the answer is affirmative, is there substantial evidence to support the finding made by the trial judge? *Id.* Once the trial judge has determined that a confession was voluntary, we should only reverse if convinced that such a finding is manifestly wrong and/or against the overwhelming weight of the evidence, *except that the scope of review is less constrained where detailed and specific findings by the trial court are lacking on the critical issue(s). McCarty v. State*, 554 So. 2d 909, 912 (Miss. 1989) (emphasis added).

By denying the motion to suppress, the trial judge implicitly found that Allen had voluntarily waived his right to an attorney when he made these statements to the police. However, nothing exists in the record showing what standard of proof the trial judge applied in making this finding. Also, nothing on the record exists showing that the trial judge made any specific findings of fact whatsoever.

The evidence presented in connection with the motion to suppress consisted of the testimonies of Officers Philip Weatherford and Whitney Carvin of the Gulfport Police Department, the testimony of Allen and the proffer of a pre-printed "Advice of Rights" form that all witnesses agreed had been presented to Allen before he made his inculpatory statement. The document, dated February 12, 1993, consisted of two sections. The first section informed the suspect of his *Miranda* rights. Under this section, a space was located for the suspect to sign or initial acknowledging that he had been presented with and understood his rights. There was no dispute that Allen voluntarily signed his initials on this space.

The second section of the document consisted of a pre-printed statement that read:

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Under this second section, was also a space for the suspect's signature. On the particular copy that had been given to Allen, the word "REFUSED" was written followed by the initials of Officer Weatherford. At trial, all the witnesses agreed that Allen had refused to sign or initial the second section.

The police officers testified that at no time did they make any threats to Allen. They also testified that even though Allen refused to sign the second part of the document, and that even though he refused to allow his statement to be tape recorded, Allen voluntarily agreed to make his inculpatory statements. Nonetheless, the detectives also admitted that before the interrogation began, Detective Carvin was cautioned by his co-workers to maintain control of his emotions, suggesting that in such instances Carvin had trouble controlling himself.

In direct contradiction to the police officers' testimonies, Allen testified that the reason that he never signed the waiver of rights was that he never agreed to waive his right to have an attorney present. He further testified that he made up his inculpatory statements in response to coercive tactics used by the police. Specifically, Allen testified that Detective Carvin violently grabbed his throat. Allen further testified that the detectives told him that they knew that he was guilty and warned him that if he did not cooperate with them, that "he would be sorry" after they took him back to jail.

Stating the obvious, the evidence presented at the hearing was in conflict. On the one hand, the detectives asserted that even though Allen refused to sign the waiver of rights and refused to allow his statement to be tape recorded, his inculpatory statements were nonetheless voluntarily given. On the other hand, Allen testified that he never intended to waive his rights, that this was reflected in the fact that he refused to sign the waiver of rights form, and that he "made up" the statements that he gave to the police in response to the coercive tactics allegedly used on him.

We think that the record of the hearing does support the conclusion beyond a reasonable doubt that Allen voluntarily waived his right to an attorney when he gave his statement to the Gulfport police. Accordingly, we hold this assignment of error without merit.

d) Did the Trial Court Err in Cutting Off Allen's Attempt to Impeach J.M.'s Credibility By Exploring

the Matter of Her Plea Agreement?

At trial, the prosecution presented the testimony of J.M. to the effect that she witnessed Allen inflict the abuse that was discovered by Pettinger on February 9, 1993. During his cross-examination of J.M., Allen attempted to question her with respect to her plea bargain in which she agreed to testify against Allen in return for being charged with the less serious offense of felony child neglect. Specifically, Allen attempted to bring out the fact that J.M. would have faced the possibility of a twenty-year sentence as a result of being convicted on the more serious charge of felony child abuse had she not made her deal to testify against Allen. The trial court prevented Allen from confronting J.M. with this fact. Allen now contends that this ruling was erroneous because it prevented him from showing improper bias and motive on the part of J.M. We agree.

The Mississippi Supreme Court has stated that "one accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and especially this is so with respect to the principal prosecution witness." *Suan v. State*, 511 So. 2d 144, 148 (Miss. 1987). Not only is this right secured by the Mississippi Rules of Evidence, but it is also a function of the confrontation clauses of the federal and state constitutions. *Id.* "This right, which is the cornerstone of American justice, was designed 'not merely to insure punishment to the guilty, but to insure protection to the innocent, [for without it] every one would hold his liberty at the mercy of the government.'" *Foster v. State*, 508 So. 2d 1111, 1114 (Miss. 1987) (alteration in original)(quoting *Beckwith v. Bean*, 98 U.S. 266, 297 (1878)).

The right to cross-examine witnesses, however, is not unbounded and its contours are shaped to accommodate other legitimate interests. *Foster*, 508 So. 2d at 1114. Thus, the right is "always subject to the trial court's inherent power to limit cross-examination to *relevant* factual issues." *Id.*(emphasis added). "The right of confrontation and cross examination . . . extends to and includes the right to fully cross examine the witness *on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony.*" *Horne v. State*, 487 So. 2d 213, 216 (Miss. 1986) (quoting *Myers v. State*, 296 So. 2d 695, 700 (Miss. 1974)).

In the present case, J.M. was the prosecution's principal witness against Allen. We think that questioning as to the possible sentence that she faced if she had not agreed to plead guilty to a lesser charge and to testify against Allen is highly relevant to the issue of the existence of any improper motive or bias that may have been inherent in her testimony. As such, it bears directly on the issue of credibility. Accordingly, we hold that the trial court erred in not allowing Allen the opportunity to explore fully this issue.

Normally, we would reverse the trial court's judgment on account of this error and remand for a new trial. Three factors, however, persuade us that to do so in the present case would serve no purpose. First, the jury had before it a substantial amount of evidence quite apart from J.M.'s testimony pointing to Allen's guilt. Second, while it is true that J.M. could be considered the "principal witness" against Allen in that she was the only witness who claimed to have actually seen Allen strike M.M., it is not outside of the realm of reason to consider her *one of a number* of "principal witnesses" against Allen. In view of the fact that both Detective Carvin and Mary Hardy -- an acquaintance of Allen's --

testified that Allen had made statements to them to the effect that he had struck M.M. on previous occasions, and that on one of those occasions, he had struck the child so hard that he thought that he had killed him, J.M.'s testimony becomes one of three direct accounts implicating Allen in the crime. Finally, although Allen could not cross-examine J.M. about the terms of her plea agreement, he did argue in his closing argument that J.M.'s testimony should not be believed because of her deal with the prosecution, in which she escaped the possibility of a twenty-year sentence and which gave her a motive to lie. In view of all of these considerations, we hold that the trial court's limitation of J.M.'s impeachment was harmless.

## III. CONCLUSION

For the foregoing reasons, we affirm.

**THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF FELONY CHILD ABUSE UNDER THE HABITUAL OFFENDER STATUTE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO HARRISON COUNTY.**

**FRAISER, C.J., BRIDGES, P.J., COLEMAN, DIAZ, KING, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR. THOMAS, P.J., NOT PARTICIPATING.**