# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00430-SCT

*LUCAS MONTEL HOWARD a/k/a BAM a/k/a*
*LUCAS M. HOWARD*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/2022 |
| TRIAL JUDGE: | HON. M. BRADLEY MILLS |
| TRIAL COURT ATTORNEYS: | LISA MISHUNE ROSS |
| | FRANK CASWELL JONES, III |
| | J. M. RITCHEY |
| | CHRISTOPHER TODD McALPIN |
| | TERRIS CATON HARRIS |
| | ROBERT SHULER SMITH |
| | JOHN K. BRAMLETT, JR. |
| | SCOTT E. ROGILLIO |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN S. GRANT, IV |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/26/2024 |
| MOTION FOR REHEARING FILED: | |


**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    Through a series of recorded jailhouse phone calls, Lucas Montel Howard—who was

being detained in the Madison County jail—directed his friend Alissia Washington to set up

a call with a drug dealer.  Howard had negotiated with several different cocaine dealers to

purchase an ounce of crack cocaine. And once Howard settled on an agreeable price and dealer, Howard convinced Washington to take some of his cash and drive from Madison County to Hinds County to buy the dope. Law enforcement had been monitoring his phone calls, and when Washington returned to Madison County, deputies pulled her over. Howard, who was talking to Washington from a jail phone during the police stop, directed her to hide the crack cocaine inside her vagina. And she did.

¶2. The hidden cocaine was later discovered when Washington was searched at the police department. The seizure led to Washington and Howard's indictment on two felony drug charges. Washington entered a best-interest plea to possession with intent to distribute cocaine and conspiracy. Howard proceeded to trial. And a jury found Howard guilty on both counts—possession of cocaine with intent to sell and conspiracy to possess cocaine with the intent to sell.

¶3. On appeal, Howard does not challenge that he constructively possessed the cocaine. Instead, he insists there was no evidence he ultimately intended to sell the cocaine or conspired with anyone to possess it with an eye on selling it. According to Howard, the State's only evidence of his intent to sell was the large quantity of crack cocaine, Howard's two prior felony convictions for selling cocaine, and Washington's guilty plea. But not only was the large quantity of crack cocaine and the Rule 404(b)[1] evidence of his past cocaine-distribution convictions enough to support the jury's finding that he intended to sell the drugs, but Howard also completely ignores his jailhouse phone calls.

---

[1] Miss. R. Evid. 404(b).

¶4.    In his phone calls, an angry Howard berates Washington for losing some of his "eggs"—slang for crack cocaine.  He also chastises her for not following his instructions to keep half his drugs hidden outside to evade authorities.  Howard reminds Washington that she is "f-cking with a trapper, a f-cking kingpin."  And Howard told her if he was not in jail, he would be "selling his shit."  So a reasonable juror could certainly conclude that upon learning Washington had lost his crack cocaine, Howard hooked her up with money and a dealer to purchase more crack cocaine—drugs that either she would sell or Howard would sell when he got out.

¶5.    Because the evidence sufficiently supports both convictions, and because Howard's other claims also lack merit, we affirm Howard's convictions.

## Background Facts & Procedural History

¶6.    In an entirely different case, Howard was charged with constructively possessing drugs at his home on September 3, 2019, with the intent to sell.  He proceeded to trial and was acquitted by a jury on that charge.  So that separate case is not before us.

¶7.    But while he was detained in the Madison County Detention Center on those prior charges, Howard made a series of phone calls to his friend Washington, who lived in Howard's house in Madison County.  It was these phone calls, which had been monitored and recorded by Madison County narcotics officers, that led to Howard's present charges and convictions for the crack cocaine he arranged for Washington to purchase on November 2, 2019—the cocaine he directed her to hide in her vagina.

¶8.    During Howard's first call to Washington, she was sobbing because she had lost some

3

of Howard's "eggs"—a term Lieutenant Trey Curtis, who for decades oversaw narcotics investigations for the Madison County Sheriff's Office, testified was slang for crack cocaine rocks. As instructed, Washington had previously hidden half of Howard's crack cocaine in a plastic bag in bamboo in the yard. After she "worked and worked and worked" the other half, she went outside to retrieve the bag but could not find it. Washington said the bag contained ten eggs, which Howard maintained were worth $1,000. Through ensuing calls, an irate Howard ordered Washington to look harder for the bag, warning her that she was "f-cking with a trapper, a f-cking kingpin." As Lieutenant Curtis explained, a trapper is someone who sells drugs from a trap house—in other words, a drug dealer.

¶9. Howard directed Washington to find phone numbers for various drug dealers. After she did, Howard haggled with these crack dealers by jailhouse phone before settling on buying thirty-one grams of crack for $1,050 from a dealer in Hinds County. Howard and Washington agreed she would make the drug purchase. Howard told Washington to get $1,090 in cash—$1,050 for the crack cocaine and $40 for phone cards. According to their plan, Washington would bring the $40 phone cards to the jail before heading to Hinds County to buy the crack cocaine.

¶10. Deputies saw Washington stop by the jail to drop off the phone card. When she left the jail, Madison County deputies tailed her to the Hinds County line. They waited for Washington to buy the crack cocaine and return to Madison County. Washington was on the phone with Howard when she was pulled over for a broken headlight. Panicked, she realized law enforcement must have monitored her phone conversations with Howard. She informed

4

Howard the "county boys" were pulling her over. At that point, Howard told her to hide "that sh-t" in her "p-ssy."

¶11. With Washington's consent, officers searched the car but did not find the cocaine. They arrested Washington on traffic charges. And when she was more thoroughly searched by a female jailer, Washington handed over the concealed drugs. Forensic testing revealed Washington possessed 26.7 grams of crack cocaine.

¶12. Howard and Washington were charged with possession of cocaine with intent to sell and conspiracy to possess cocaine with the intent to sell. Washington entered a best-interest guilty plea. Howard went to trial. At trial, the State introduced the phone recordings through Lieutenant Curtis, who as part of his investigation of Howard had been monitoring Howard's jailhouse calls.[2] Washington testified for the defense. She claimed the phone discussions about lost eggs were about marijuana buds, not crack cocaine. She insisted Howard directed her to buy marijuana. But because she was a crack addict, she instead took Howard's money and bought cocaine for herself. She testified she entered a best-interest plea, accepting guilt but not admitting the charged crimes, because she never conspired with Howard to buy cocaine.

¶13. The jury rejected Washington's story. And it found Howard guilty on both counts. The court sentenced Howard as a nonviolent habitual offender[3] and subsequent drug

_____

[2] The State's other witnesses were the female jailer who found the cocaine Washington hid in her vagina, the forensic analyst who tested the cocaine, and the K-9 officer who pulled Washington over in Madison County.

[3] Miss. Code Ann. § 99-19-81 (Rev. 2015).

offender[4] to sixty years for possession with intent to sell and twenty years for conspiracy with the two sentences to run concurrently. Howard timely appealed.

## Discussion

### I. Sufficiency of the Evidence

#### A. Possession with Intent to Sell

¶14. Howard first challenges the sufficiency of the evidence supporting his conviction for possessing cocaine with intent to sell. When assessing the sufficiency of evidence, this Court applies de novo review. *Sanford v. State*, 247 So. 3d 1242, 1244 (Miss. 2018) (citing *Brooks v. State*, 203 So. 3d 1134, 1137 (Miss. 2016)). We ask whether, viewing the evidence in the light most favorable to the State, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Williams v. State*, 285 So. 3d 156, 159 (Miss. 2019) (citing *Martin v. State*, 214 So. 3d 217, 222 (Miss. 2017); *Hughes v. State*, 983 So. 2d 270, 276 (Miss. 2008)).

¶15. The substantive possession count charged that on or about November 2, 2019, Howard knowingly and intentionally possessed with the intent to sell, distribute, or transfer more than ten but less than thirty grams of cocaine, a Schedule II substance, in violation of Mississippi Code Section 41-29-139(b)(1)(C) (Rev. 2018). Howard does not contest that the substance recovered from Washington was more than ten grams of cocaine. Nor does he challenge his constructive possession of the cocaine from jail. *See Williams v. State*, 334 So. 3d 68 (Miss. 2022) (holding that the evidence was sufficient to support defendant's constructive

---

[4] Miss. Code Ann. § 41-29-147 (Rev. 2018).

possession of drugs found in his home while he was detained in jail). Rather, on appeal, Howard zeroes in on the *intent* element. And he suggests the State's only evidence of his intent to distribute or sell was the amount of crack cocaine recovered and his two prior drug-dealing convictions.

### 1. Intent to distribute may be proved by quantity and 404(b) evidence.

¶16. Citing **Miller v. State**, 634 So. 2d 127, 129 (Miss. 1994), Howard asserts the quantity of cocaine recovered—an amount he emphasizes was small enough for Washington to hide in her vagina—was not inconsistent with personal use. Howard also argues that his prior cocaine dealing convictions, while admissible to prove motive and intent, are not substantive evidence of his present charge.

¶17. This court has recognized "[t]here is no magic number as to quantity with respect to evidence of intent to distribute." **Fox v. State**, 756 So. 2d 753, 759 (Miss. 2000). But "[w]here the amount is greater than what one might ordinarily have for personal consumption, it does create an inference of intent to distribute." **Id.** Courts have found quantities as small as 5.72 grams of crack cocaine support an inference of distribution. **United States v. Lamarr**, 75 F.3d 964, 973 (4th Cir. 1996); *see also* **United States v. Smith**, 91 F.3d 1199, 1201 (8th Cir. 1996) (finding evidence supported possession with intent to distribute because 9.9 grams of cocaine base "far exceeds the amount attributable to personal use"); **United States v. Bell**, 954 F.2d 232, 235 (4th Cir. 1992) ("The thirteen plus grams of crack . . . is a 'large quantity' supporting the factfinder's inference that an intent to distribute existed."), *overruled on other grounds by* **United States v. Burgos**, 94 F.3d 849, 860-62 (4th

7

Cir. 1996). And here, Washington spent Howard's $1,050 to purchase a much larger quantity—26.7 grams of crack cocaine. While she claimed she intended to smoke it all, the large amount cuts against Howard's appellate argument. So does the evidence of his prior involvement in the drug trade—something this court has found admissible to prove intent to distribute. *Jowers v. State*, 593 So. 2d 46, 47 (Miss. 1992); *Jackson v. State*, 580 So. 2d 1217, 1220 (Miss. 1991); *Stringer v. State*, 557 So. 2d 796, 797 (Miss. 1990). When combined with the large quantity of crack cocaine, Howard's two previous felony cocaine distribution convictions—while not substantive evidence—were certainly sufficient under Rule 404(b) to support an *inference* of his intent to distribute.

### 2. *Howard's phone conversations also showed his intent to distribute.*

¶18. Though the amount of crack cocaine and Howard's drug-dealing history sufficiently proved his intent to distribute the drugs, this was not a quantity-alone or mere 404(b) case. The jury also heard numerous jailhouse phone recordings in which Howard discussed his "business" with Washington. As he put it, he had to get "[his] money" to try to "make up for" what he was "losing." He berated her for losing $1,000 worth of his drugs. He was also mad he could not "sell[] his shit" because he was in jail. He reminded Washington that she was "f-cking with a trapper," or as he described himself, a "kingpin." Howard also personally negotiated the purchase of the almost thirty grams of crack cocaine. Based on Howard's own admissions, a rational juror could conclude beyond a reasonable doubt that Howard intended to distribute the cocaine he directed Washington to buy.

8

## B.        Conspiracy to Possess Cocaine with Intent to Sell

¶19.    Howard also attacks the sufficiency of the evidence supporting his conspiracy conviction.  A conspiracy is an agreement between two or more persons to commit a crime or accomplish an unlawful purpose or a lawful purpose unlawfully.  Miss. Code Ann. § 97-1-1 (Rev. 2014).  The offense is complete with the agreement, which can be formal or informal.  *Griffin v. State*, 480 So. 2d 1124, 1126 (Miss. 1985).  Count Two charged Howard with conspiring with Washington to possess cocaine with intent to sell in violation of Sections 97-1-1 and 41-29-139(b)(1)(C).

¶20.    Howard again focuses on intent, arguing there was no evidence of an agreement to distribute the cocaine he directed Washington to buy.  According to Howard, to prove this charge, the State *exclusively* relied on Washington's best-interest guilty plea to conspiring with Howard to possess the cocaine with intent to sell.

¶21.    While the State did ask Washington about her guilty plea, this was by no means the only evidence of Howard and Washington's crack-distribution conspiracy.  Again, Howard downplays his jailhouse phone calls.  Through these calls, which were played for the jury, Washington helped Howard negotiate a cocaine buy from jail.  To further the conspiracy, Howard directed Washington to get $1,050 for the cocaine and a $40 phone card.  Washington then dropped off the phone card at the jail before heading to Hinds County to buy the cocaine—drugs that were intended to be sold to replace the cocaine she lost.  Howard used the phone cards to talk to Washington while she was returning from Hinds County.  And Washington was on the phone with Howard when she was pulled over, prompting Howard

9

to direct her to hide their freshly purchased cocaine.

¶22.   Thus, there was more than sufficient evidence that Washington agreed to purchase the cocaine for the self-proclaimed "kingpin" Howard, who was not able to "sell[] his shit" while detained.

## II.    Confrontation Clause

¶23.   Howard next argues his Sixth Amendment right to confront the witnesses against him was violated.   *See* U.S. Const. amend VI. When cross-examining Lieutenant Curtis, Howard's lawyer tried to ask the officer about Howard's previous acquittal on a separate drug charge.  The State immediately objected.  And the trial judge sustained the objection. The judge admonished the jury that the outcome of another case had no bearing on this one. Howard frames the judge's action as unfairly limiting Howard's right to fully cross-examine the officer.  We disagree.

¶24.   The real issue is whether the trial court abused its discretion by limiting cross-examination to only matters relevant to *this* case.  As the State points out, the trial court has inherent power to limit cross-examination to relevant matters.  **Mixon v. State**, 794 So. 2d 1007, 1013 (Miss. 2001).  And Howard's acquittal on the prior and entirely distinct drug charge concerning cocaine found at his house months earlier was not relevant to this case. **King v. State**, 580 So. 2d 1182, 1189 (Miss. 1991).

¶25.   Mention of the acquittal happened after Howard's counsel asked Lieutenant Curtis about trap houses and whether marijuana could be sold from them.  His lawyer asked the officer, "You're not telling the ladies and gentlemen of this jury that Mr. Howard had crack

cocaine at 330 Cowan Street, correct?" The State objected to the form of the question. So Howard's counsel rephrased the question, asking, "Are you telling the ladies and gentlemen of this jury that Mr. Howard had crack cocaine at 330 Cowan Street *in this case*?" (Emphasis added.) The officer responded, "No, not in this case. In another case he did." Howard's counsel then interjected, "Oh, in another case in which he got acquitted of, correct."[5] This prompted the State to object, and the trial judge sustained the objection. Again, the trial court was within its discretion to limit cross-examination to relevant matters. *Mixon*, 794 So. 2d at 1013. That Howard had been acquitted on an earlier charge from a September 3, 2019, drug raid of his house was not relevant to these charges centered on the cocaine found in Washington's vagina on November 2, 2019. *King*, 580 So. 2d at 1189.

¶26.    While Howard relies on two cases to support his Confrontation Clause claim, *Suan v. State*, 511 So. 2d 144, 146-48 (Miss. 1987), and *Anthony v. State*, 108 So. 3d 394, 398 (Miss. 2013), those cases are distinguishable. *Suan* and *Anthony* both involved limiting defense counsel from asking questions about separate charges then pending against the State's witnesses. *Suan*, 511 So. 2d at 146; *Anthony*, 108 So. 3d at 397-98. And because those witnesses were potentially testifying to work off pending charges against them, this court deemed the questions relevant to their credibility. *Suan*, 511 So. 2d at 147-48; *Anthony*, 108 So. 3d at 397-98.

_____

[5] Howard owned the house at 330 Cowan Street in Canton, Mississippi. The separate earlier drug charge, for which Howard was previously acquitted, stemmed from a raid on Howard's house. Howard was outside the house when the raid occurred. And Howard insisted he did not stay in the house—rather he rented the house to Washington. The State's theory in that case was that Howard constructively possessed the drugs found during the raid with intent to distribute them.   A jury acquitted Howard of that separate charge.

¶27. But this was not a situation where a cooperating witness was testifying with hopes of reduced charges or leniency. Nor was Howard's counsel probing for a possible ulterior motive for Lieutenant Curtis's testimony. So we find no abuse of discretion in the trial judge's sustaining the State's relevancy-based objection.

¶28. Nor is this case like *Dykes v. State*, 232 Miss. 379, 99 So. 2d 602 (1957), another case Howard cites to support offering evidence of his earlier acquittal. The issue in *Dykes* was a jury instruction, not the scope of cross-examination. *Id.* at 604-05. The defendant in that case was on trial for his wife's murder. *Id.* at 603. The defendant's wife had stepped in front of the defendant's gun as he was attempting to shoot his father-in-law. *Id.* at 604. But the defendant had previously been acquitted for the murder of his father-in-law, claiming self-defense. *Id.* at 603-05. The State—in the subsequent case—submitted an instruction requiring the jury to determine whether the defendant's killing of his father-in-law was in self-defense. *Id.* at 605. Because he had previously been acquitted of the murder of his father-in-law, this Court held that allowing the jury instruction was reversible error. *Id.* at 607. But unlike *Dykes*, the charges for which Howard had been acquitted stemmed from a separate event. So any decision by the jury in that previous case had no bearing on this one.

¶29. "[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Goforth v. State*, 70 So. 3d 174, 184 (Miss. 2011) (quoting *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988)). While the defense hoped to introduce evidence of Howard's acquittal on the separate, earlier

12

charges, no abuse of discretion—and no Confrontation Clause violation—occurred when the trial judge limited the narcotics officer's cross-examination to matters relevant to the charges for which Howard was then on trial.

### III.   Double Jeopardy

¶30.   Similarly, Howard's acquittal on the separate, earlier charges did not create a double-jeopardy violation.  Howard asserts the collateral estoppel doctrine, which "is a part of the Fifth Amendment's guarantee against double jeopardy."[6] *Ashe v. Swenson*, 397 U.S. 436, 442, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970).  According to the United States Supreme Court, collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443.

#### A.      Howard's prior charge and present charge were not based on the same ultimate facts.

¶31.   Howard bases his challenge on the State playing portions of the jailhouse phone calls as 404(b) evidence in rebuttal during his earlier trial.  Howard suggests that because the earlier jury had acquitted him for the cocaine found during the raid of his home, it had necessarily decided an issue of ultimate fact in this case—that he had not conspired with Washington nor constructively possessed the cocaine with the intent to distribute.

¶32.   As support, Howard cites *Griffin v. State*, 545 So. 2d 729, 730 (Miss. 1989).  But in

---

[6] The Fifth Amendment's Double Jeopardy Clause protects against (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *Kelly v. State*, 80 So. 3d 802, 805 (Miss. 2012) (citing *United States v. Dixon*, 509 U.S. 688, 695-96, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993)).

sharp contrast to this case, *Griffin* involved *the exact same set of facts* in both trials. Griffin was first tried for aiding and abetting jury tampering. *Id.* at 733. He was acquitted of that charge. *Id.* Then, based on the same alleged actions, the State attempted to repackage those same facts and try him for a different crime—conspiracy to tamper. *Id.* In ruling that double jeopardy prevented a second prosecution, this Court applied the "rational jury test" from *Ashe*, asking "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 734 (quoting *Ashe*, 397 U.S. at 444). This Court concluded, as a matter of common sense, a jury in the second trial could not find Griffin guilty of conspiracy without making a finding of ultimate fact directly contrary to what the jury found in the first trial. *Id.*

¶33. That is not the case here. We are not dealing with one alleged act based on the same facts committed the same date. Rather, the first trial—the trial in which Howard was acquitted—was based on an entirely different drug seizure, occurring months earlier. In that case, the charge of possession with intent to distribute cocaine within 1,500 feet of a church stemmed from the September 3, 2019 drug raid on Howard's home.

¶34. But the present trial was based on different operative facts and concerned two entirely separate charges—(1) a substantive charge for Howard's constructive possession with intent to distribute the 26.7 grams of crack cocaine Washington purchased in Hinds County and got caught with in Madison County on November 9, 2019, and (2) a conspiracy charge relating to their agreement and plan to arrange and carry out this cocaine purchase.

**B.      *Introducing evidence of misconduct is not the same as prosecution of that conduct.***

14

¶35.   The United States Supreme Court has recognized "the basic, yet important, principle that the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *United States v. Felix*, 503 U.S. 378, 387, 112 S. Ct. 1377, 1383, 118 L. Ed. 2d 25 (1992).  And "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *Id.* at 386.

¶36.   In *Felix*, the defendant insisted that because the government had offered overlapping evidence under Rule 404(b) to prove his state of mind at his first drug trial, it was collaterally estopped from prosecuting him a second time on different methamphetamine charges. *Id.* at 384-85.  Like the offenses before us, the drug transactions and charges in Felix's second trial were factually different and committed on different dates than those resulting in Felix's first conviction. *Id.* at 385.  The Supreme Court rejected his collateral estoppel claim, reasoning that the Government *did not* prosecute the defendant for the earlier drug conduct. *Id.* at 387.  Instead, "it simply introduced those transactions as prior acts evidence under Rule 404(b)." *Id.*  So "[t]he Government was therefore free to prosecute Felix in the [second trial] for the substantive drug crimes . . . ." *Id.*

¶37.   Here, despite hearing the jailhouse phone calls, the first jury was never asked to determine if Howard constructively possessed with intent to sell the cocaine found in Washington's vagina on November 2, 2019.  Nor were they tasked with deciding if Howard conspired with Washington to possess the cocaine with intent to sell.  Because the phone conversations were offered as 404(b) evidence in rebuttal during the first trial—only to prove Howard's intent—the State was not estopped from prosecuting the separate and distinct

15

cocaine possession and conspiracy charges.

### IV.    Co-conspirator's Guilty Plea

¶38.    Howard also claims the trial court reversibly erred by allowing evidence that Washington—a co-defendant of Howard's—pled guilty to the same charges brought against Howard.  He concedes he did not object to this evidence at trial.  But he asks this Court to review this issue for plain error.  *See Shinstock v. State*, 220 So. 3d 967, 970 (Miss. 2017) ("'Under the plain-error doctrine,' this Court 'can recognize obvious error which was not properly raised by the defendant and which affects a defendant's fundamental, substantive right.'" (quoting *Conners v. State*, 92 So. 3d 676, 682 (Miss. 2012))).  Alternatively, Howard asserts his trial counsel was ineffective for allowing this evidence.[7] *Turner v. State*, 366 So. 3d 855, 860 (Miss. 2023) ("[A]n ineffective-assistance claim based on counsel's alleged "failure to object to evidence offered by the state . . . *must* be raised on direct appeal." (quoting Miss. R. App. P. 22 cmt.)).

¶39.    But this is not a case where Howard's counsel simply failed to object.  Rather, it was Howard's attorney who called Washington as a witness and asked her about her guilty plea.  And Howard's counsel's closing argument makes clear he highlighted Washington's guilty plea for strategic purposes.  He did so to bolster her credibility when she testified that Howard directed her to buy marijuana, and not cocaine, because she had already taken responsibility and pled guilty to buying cocaine to feed her addiction.

¶40.    Howard is correct that the admission of a co-defendant's conviction for the same

---

[7] Howard was represented at trial by different counsel than on appeal.

offense can be reversible error, subject to plain-error review. *E.g.*, *Johns v. State*, 592 So. 2d 86, 90-91 (Miss. 1991). But this Court has distinguished between convictions based on jury verdicts and convictions based on guilty pleas. When a co-defendant pleads guilty, the defendant on trial may actually *want* the jury to know. This is particularly true when the State has offered the co-defendant a lenient sentence in exchange for his testimony. *Johnson v. State*, 477 So. 2d 196, 213 (Miss. 1985). For this reason, the defendant "has a duty to object" to evidence of the co-defendant's guilty plea. *Id.* at 214. Otherwise, "[t]o permit this defendant to say nothing at trial, and complain for the first time in post-trial proceedings presents a classic case of having your cake and eating it, too." *Id.*

¶41. Howard's lawyer brought up Washington's plea as part of his defense strategy. So this issue is not only waived, *id.*, but it also cannot support an ineffective-assistance-of-counsel claim. *See Morrow v. State*, 275 So. 3d 77, 84 (Miss. 2019) (rejecting ineffective assistance claim based on the failure to object to DNA evidence because it was "conceivable that Morrow's trial counsel welcomed the DNA evidence as part of his trial strategy").

## V. Prosecutorial Misconduct

¶42. Howard also asks for plain-error review of seven alleged instances of prosecutorial misconduct. Howard admits that, with one exception, he did not contemporaneously object to the State's comments. Instead, he cites *Smith v. State*, 457 So. 2d 327, 333-34 (Miss. 1984), claiming plain error arose from the combination of these alleged inappropriate comments. But unlike *Smith*, here the State did not subject Howard "to such irrelevant, inflammatory and prejudicial evidence as to deny the appellant his right to a fair and

impartial trial." *Id.* at 336.

¶43.    Three alleged examples of prosecutorial misconduct are tied to evidentiary claims that, as already discussed, lack merit—namely, the admission of Washington's guilty plea, the exclusion of Howard's prior acquittal on the earlier drug charge, and the State's use of his jailhouse phone calls as 404(b) evidence in his earlier trial.

¶44.    Another allegation takes aim at the prosecutor's mentioning in closing Howard's sentence for a prior drug offense. This is the one instance when Howard's counsel objected. But the State had simply referred to evidence that had been admitted during trial *without objection*. Thus, Howard's prior drug convictions and sentences were fair game. ***Bell v. State***, 725 So. 2d 836, 851 (Miss. 1998) ("[The prosecutor] may comment upon any facts introduced into evidence." (alteration in original) (quoting ***Davis v. State***, 684 So. 2d 643, 656 (Miss. 1996))).

¶45.    A fifth assertion is that the prosecutor made an improper send-a-message comment. But Howard fails to show how the State's telling the jury "you have a job" not to be swayed by emotions but to convict Howard if the State proved its case amounts to telling the jury to "send a message" to other criminals. *See **Payton v. State***, 785 So. 2d 267, 270-71 (Miss. 1999) (describing and denouncing "send a message" arguments). Indeed, the judge instructed the jury they "should not be influenced by . . . sympathy[.]" Howard also points out that the prosecutor made an errant reference to "three pounds." But the amount of cocaine—while not three pounds—was also not in dispute. So this unobjected-to comment did not render his trial fundamentally unfair.

¶46. Finally, Howard claims the State made derogatory comments about his trial counsel and interjected his personal opinion about Washington's credibility. But comments about defense counsel's "lawyer talk" and the observation that crack addicts like Washington cannot be trusted are neither impermissible nor "so inflammatory" that the trial judge should have objected sua sponte. *O'Connor v. State*, 120 So. 3d 390, 399-401 (Miss. 2013).

¶47. Alternatively, Howard argues his trial counsel was constitutionally ineffective for not objecting to this alleged prosecutorial misconduct. Again, there was no misconduct. So Howard fails to show plain error occurred or that failure to object to these comments, which was presumably trial strategy, prejudiced his defense. *Cox v. State*, 793 So. 2d 591, 600 (Miss. 2001) (holding a defendant "must meet both prongs of the *Strickland* test to prove ineffectiveness of counsel: that the legal representation was deficient and that the deficient performance prejudiced the defense" (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Edwards v. State*, 615 So. 2d 590, 596 (Miss. 1993))).

## VI. Sleeping Juror

¶48. Howard's final attack on his trial lawyer stems from his not seeking to remove a sleeping juror.

¶49. Howard's counsel informed the judge one of the jurors had "dozed off a couple of times." And the State also chimed in that a juror had been asleep. The trial judge responded he had "noticed that too." The judge inquired how much longer the State's witness would take. Howard's counsel suggested the court take a break for the jury to stretch their legs in

about five minutes. The judge, the State, and Howard's counsel all agreed to this plan. After the short recess, the record is silent about sleeping jurors.

¶50. On appeal, Howard argues he has a "facially valid claim" that he is entitled to a new trial based on his trial counsel's ineffectiveness. But Howard fails to show how his counsel's decision not to seek jurors' removal was anything other than strategic or that prejudice resulted. As this Court has held, that a juror might have fallen asleep for an unknown duration, without being removed, is not cause for automatic reversal. *Birkhead v. State*, 57 So. 3d 1223, 1236-37 (Miss. 2011). This is especially true when the trial judge immediately intervenes. *Id.* Here, the trial judge immediately intervened when the issue of sleepy jurors was brought to his attention. And Howard's counsel obviously decided such intervention was sufficient and a better trial strategy than seeking to have the juror removed. Thus, Howard's final ineffective-assistance claim also fails.

### VII. Weight of the Evidence

¶51. Recasting nearly the same arguments he lodged against the sufficiency of the evidence, Howard alternatively argues his convictions are against the overwhelming weight of the evidence. But for the same reasons sufficient evidence supported both counts of conviction, viewing the evidence in the light most favorable to the jury's verdict, Howard's convictions do not sanction an unconscionable injustice. *See Little v. State*, (holding that, when reviewing the denial of a motion for new trial, this Court "weigh[s] the evidence in the light most favorable to the verdict, 'only disturb[ing] a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an

unconscionable injustice'" (second alteration in original) (quoting ***Lindsey v. State***, 212 So. 3d 44, 45 (Miss. 2017))).

### VIII.  Cumulative Error

¶52.    Howard's final argument is that cumulative error requires reversal.    But "a prerequisite of cumulative error is error." ***Garcia v. State***, 300 So. 3d 945, 981 (Miss. 2020). Because Howard has not shown any harmless or otherwise non-reversible error occurred, the cumulative-error doctrine does not apply.

¶53.    We affirm Howard's convictions and sentences.

¶54.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**